19890

WADSWORTH INDUSTRIES, INC., et al., Respondents, v. WEST-GATE KNITTING, Inc., et al., Defendants, Westgate Knitting, Inc., being Appellant.

(212 S. E. (2d) 571)

*Messrs. Lyles & Lyles,* of Spartanburg, *for Appellant,*

*Messrs. Boyd, Rice & Pruitt,* of Spartanburg, *for Respondents,*

February 4, 1975.

AGNEW, Acting Associate Justice:

On December 13, 1973, the judge of the Spartanburg County Court appointed a receiver to take possession of all the property and assets of Westage Knitting, Inc. The action is beyond question an equity matter; it involves much more than $25,000.00.

The threshold question for determination by this Court is raised by appellant's first question: Did the court exceed its twenty-five thousand dollars jurisdictional limit? The question which we must answer is whether the Spartanburg County Court has general equity jurisdiction. The authority of that court is conferred by § 15-804 of the Code of Laws of South Carolina (1962). As amended by Act No. 1134 in 1970, it reads in pertinent part as follows:

"The county court shall have concurrent jurisdiction with the court of common pleas in all civil cases and special proceedings, both at law and equity, except that its jurisdiction shall not extend to actions at law for the recovery of money when the amount demanded in the complaint exceeds twenty-five thousand dollars, or for the recovery of specific real or personal property when the value of such property exceeds twenty-five thousand dollars. . . ."

The wording of this statute is almost identical with  the wording of the statute construed by us in the case of *Bramlett v. Young,* 229 S. C. 519, 93 S. E. (2d) 873 (1956). In that case we held that the Greenville County Court has unlimited equity jurisdiction. By a similar token, we hold that the Spartanburg County Court has

general equity jurisdiction, and jurisdiction of this case and the issues involved.

Our affirmance of the judgment below, however, does not mean that Spartanburg County Court has jurisdiction to determine, in the receivership proceeding, issues which in essence and effect are actions at law for the recovery of money, specific real or personal property when the value of such property exceeds the sum of $25,000.00.

By petition dated October 1, 1973, the petitioners asked the court to appoint a receiver to take over and manage the affairs and assets of the defendant Westgate Knitting, Inc. They alleged that they (Simon and Cook) are the business managers, under a contract, of the affairs of Westgate; that Westgate is unable to meet the expenses of operation and pay debts previously incurred and that the business was forced to cease operation August 27, 1973. They further allege that there are four suits pending against Westgate for the collection of monies alleged to be due. In addition, they assert that $6,700.00 is due the petitioners for services performed and that Westgate is indebted to other creditors under certain contracts in the approximate amount of $302,-000.00 against assets of approximately $196,000.00.

The petitioners further allege that Westgate is the payee on an Internal Revenue check in the amount of $77,000.00, held in the United States Post Office in Spartanburg, and that attempts have been made by defendants to take possession of the check and that there is danger that this sum will not be appropriated to the debts and obligations of Westgate.

After hearings on October 25 and November 9 and 10, 1973, the judge of the county court issued his order dated December 13, 1973, appointing a receiver pursuant to § 10-2301 *et seq.*, of the Code of Laws of South Carolina (1962).

In his order the judge found as follows:

"The testimony and evidence reveal to the satisfaction of the Court that the business is insolvent and unable to oper-

ate on a day to day basis with insufficient funds to meet operating expenses and that such condition has existed for some time. The current liabilities exceed the current assets by more than double and the total liabilities exceed the total assets even when the latter includes all the equity value in the machinery, the $77,000.00 tax refund and an anticipated refund of $37,000.00 expected next year. The bank account balance as of October 10, 1973, was Three ($.03) cents. Westgate has ceased to be a 'going concern' and while there are no judgments of record at this time against Westgate, there is Federal Tax Lien in the sum of Twenty-one Thousand, Nine Hundred Fifty-eight ($21,958.00) Dollars and several secured creditors have commenced actions for repossession of machinery under lien on which the payments are past due.

"The testimony and evidence further reveal to the satisfaction of this Court that there is a grave danger to the creditors of Westgate if the refund check of some $77,000.00 be released to the care, custody or control of anyone other than a properly bonded Receiver under the supervision of this Court inasmuch as there has already been a misappropriation of funds owned by Westgate as testified to and admitted by Jacqueline Mee Sans and Ray Sans. This came about upon the application for and receipt by the latter of a certain insurance cash value payment which was owned by and due to Westgage but which was used by Mr. and Mrs. Sans for payment to a corporation called Churchill Fabrics, Inc., which is the landlord of Westgage in Spartanburg, South Carolina, and is owned by Mrs. Sans. Around the time Mr. and Mrs. Sans issued orders to the Postmaster in Spartanburg, South Carolina, to close the box of Westgate and forward all mail to them at their Florida address. This was peculiarly close to the time that the expected refund check from the Internal Revenue Service was due to arrive.

"The alleged managers, Simon and Cook, when discovering the notice to the post office in respect to the mail, immediately obtained an injunction to prevent the Postmaster

from distributing the mail. At the same time, suit was commenced by Wadsworth and Astor for collection of debts alleged to be due it by Westgate.

"The heart of the controversy seems to stem from the $77,000.00 check and who has control of it. Even if Westgate were solvent, the Court would, under the testimony and evidence find that Westgate is at best in imminent danger of insolvency and that Mr. and Mrs. Sans have adopted a course of conduct evidencing a fraudulent intent to divert the $77,000.00 check from Westgate."

The next question raised by this appeal is taken from Westgate's brief as follows:

"Was there sufficient competent evidence under Section 10-2301, *et seq.* to support the Court's finding of the appointment of a Receiver on the grounds of insolvency, eminent danger of insolvency and/or fraudulent intent on the part of Mr. and Mrs. Sans, sole officers, directors and/or stockholders of Westgate, to divert the $77,000.00 check from Westgate to their personal use?"

A review of the record convinces us that the evidence was abundantly sufficient to support the court's finding. In addition, the agreed statement of fact which is binding on the parties, contains the following: "an unverified audit made at the request of respondents shows assets of appellant to be $327,707.73, and its liabilities to be $12,680.00 greater than its assets." We find no error in the judge's appointment of a receiver.

After the county court order appointing a receiver, counsel for Westgate noticed a motion based on his own affidavit, asking that the time for answering be extended until 20 days after the receiver furnishes to the court a list of all assets and liabilities. Apparently counsel sought to further litigate the question of whether a receiver should have been appointed.

Error is now alleged on the part of the county court in failing to grant the motion. We find no error. In the county

court order of January 3, 1974, the judge correctly held that the only matter upon which he had ruled was whether a receiver should be appointed. The receiver was appointed after proper notice as required by § 10-2303 of the Code, and after all parties had been heard to their own satisfaction on the receivership issue. The judge recognized the fact that a receivership may be vacated if a showing warranting such action be made. He correctly held that "the only issue involved and determined by the court was that of the necessity of the appointment of a receiver to protect the assets of the defendant and this Court so determined (in the order of December 13, 1973) that the appointment was proper and justified."

Obviously, all interested parties are entitled to litigate at an appropriate hearing any issue involving any claim on the merits.

Prior to the instigation of the receivership petition, kindred matters in separate actions had been before the court. They resulted in injunctions being issued by the county court restraining Westgate, and other interested parties, from disposing of property. The receivership order supersedes the injunction orders, but is not in conflict with them.

The injunction orders restrained the defendants from disposing of the properties. The receivership order directed the defendants to turn the properties over to a receiver. Defendants can no longer be enjoined from disposing of property held by the receiver.

Though we have not discussed each question raised in appellant's brief *seriatim,* all questions have been considered and decided adversely to the appellant.

The judgment of the County Court of Spartanburg County is affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.