23061

B. W. ROGERS, Appellant v. SALISBURY BRICK CORPORATION, Respondent.

(382 S. E. (2d) 915)

Supreme Court

*James A. Bell,* St. George and *James B. Richardson, Jr.,* of *Richardson and Smith,* Columbia, *for appellant.*

*Thomas O. Berry, Jr.,* St. George and *Isadore S. Bernstein* of *Hammer and Bernstein,* Columbia, *for respondent.*

Heard Nov. 15, 1988.

Decided Aug. 14, 1989.

FINNEY, Justice:

Appellant B. W. Rogers and respondent Salisbury Brick Corporation entered into a lease agreement which granted respondent the right to remove certain minerals from appellant's property. Appellant brought this action seeking rescission of the lease agreement, damages, an accounting and injunctive relief. The trial court determined that appellant was not entitled to any relief. We remand this case for an accounting.

Under the lease agreement entered into on July 29, 1983, respondent acquired the right to mine brick clay, sand clay and topsoil from appellant's property. The lease provided

that respondent compensate appellant monthly at the rate of one dollar ($1.00) per thousand brick equivalent shipped from respondent's business. The initial term of the lease was for four years with an option to renew for ninety-six additional years at four-year intervals. Remuneration was to be "adjusted for each renewal period in proportion of (sic) increase or decrease in the price of brick, sand clay and topsoil at the time of renewal, compared with the costs at the time of the prior renewal."

According to the record, both parties complied with the terms of the lease for the initial three years. However, in April of 1986, respondent's engineer recognized that it was necessary to mix appellant's clay with another type of clay in order to produce brick of the desired consistency and characteristics.[1] For this reason, clay from an alternative source was used to supplement the clay removed from appellant's property, and respondent adjusted compensation in June of 1986 to fifty cents per thousand bricks.[2]

In November and December of 1986, appellant discovered a discrepancy between compensation tendered and the amount due based on the number of truckloads of clay removed. Appellant requested an accounting of clay obtained from his property and its proportion to clay from other sources used in brick production. An examination of respondent's records indicated that appellant was due $863 for underpayments in November and December 1986. Respondent tendered the $863, but appellant refused to accept payment, alleging that he was due additional compensation for other months in which he was underpaid.

Appellant contends that he is entitled to rescind the mineral lease agreement because respondent intentionally misrepresented and underpaid the amount of royalties due.

It is a general legal principle that a breach of contract warranting rescission "must be so substantial and fundamental as to defeat the purpose of the contract." *Elliott v. Snyder*, 246 S. C. 186, 191, 143 S. E. (2d) 374, 375 (1965). Thus, a rescission will not be granted for a minor

---

[1] According to respondent's engineer, appellant's clay had to be mixed with a lighter clay at a one-to-one ratio, or fifty percent, to produce brick meeting the new consistency requirements.

[2] *Id.*

or casual breach of a contract, but only for those breaches which defeat the object of the contracting parties. *See Davis v. Cordell,* 237 S. C. 88, 115 S. E. (2d) 649 (1960).

The trial court determined that there was no intentional misrepresentation, but that the November and December payments were "inadvertent." It further concluded that respondent committed no breach entitling appellant to rescind the lease, that appellant had been justly compensated under the terms of the lease, and that an accounting was inappropriate.

We agree that there was no substantial or fundamental breach which would warrant rescission, but are unable to determine "just compensation" based upon the record before this Court. Therefore, we find that an accounting is appropriate in this instance.

Appellant asserts that from June through October 1986, respondent took 467 truckloads (57%) of clay from his property and 347 truckloads (43%) of clay from another source, yet respondent paid appellant as if fifty percent of his clay was utilized in the manufacturing process.

Respondent, on the other hand, contends that underpayment was less marked from April through October because the ratio of appellant's clay to the other source was only 52% to 48% in that span. Further, respondent's manager testified that he paid appellant one dollar per thousand during April and May and did not institute payment of fifty cents per thousand until June.

An accounting is essentially an equitable remedy. *See Cox v. Lunsford,* 272 S. C. 527, 252 S. E. (2d) 918 (1979); *Evatt v. Campbell,* 234 S. C. 1, 106 S. E. (2d) 447 (1959). As an equitable remedy, an accounting is designed to prevent unjust enrichment by disclosing and requiring the relinquishment of profits received as the result of a breach of a confidential or fiduciary duty. *Smith v. Union Central Life Ins. Co.,* 112 S. C. 356, 99 S. E. 830 (1919). Equitable jurisdiction for an accounting may also be invoked (1) in actions involving long and complicated accounts where it would not be practicable for a jury to comprehend the issues and correctly make adjustment, *Jefferies v. Harvey,* 206 S. C. 245, 33 S. E. (2d) 513 (1945); and (2) when there is a need for discovery. *See generally* 1A C.J.S. Accounting § 27 (1985).

Because of the alleged discrepancy between compensation due for the percentage of appellant's clay used and the amount paid, as well as uncertainty surrounding the number of truckloads removed, we remand this case for an accounting and such other relief as may be appropriate. *See Fryar v. Currin*, 280 S. C. 241, 312 S. E. (2d) 16 (Ct. App. 1984).

Remanded.

GREGORY, C. J., and HARWELL, CHANDLER, and TOAL, JJ., concur.