THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Donnie Elgin and Elgins Paint and Body Shop, Inc., Respondents,
v.
Grace Kelly, Appellant.
 
 
 

Appeal From Richland County
Alison Renee Lee, Circuit Court Judge

Unpublished Opinion No. 2006-UP-270
Heard January 11, 2006  Filed June 6, 2006
Withdrawn, Substituted and Refiled August 28, 2006

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART

 
 
 
S. Jahue Moore, of W. Columbia, for Appellant.
C. Cantzon Foster, II, of Columbia, for Respondents.
 
 
 

PER CURIAM:  Grace Kelly appeals the trial courts refusal to grant her a new trial absolute and denial of her requests for appointment of a receiver and an accounting.  We affirm in part and reverse and remand in part.
FACTS
In 1986, Donnie Elgin established Elgins Paint and Body Shop, Inc. in Columbia, SC.  He owned and operated the corporation as the sole shareholder.  In 1989, while he was going through a divorce, he met Grace Kelly at his lawyers office.  Kelly, who was the office manager, provided accounting services for several law firms.  Elgin hired her to assist with his paint and body shop.  Eventually, Elgin and Kelly became romantically involved and began living together.  When Elgin decided to open another business in Greenville, he needed someone to run the corporation when he was not there.  Kelly purchased 50% of the corporation for $70,000.[1]  
With Elgin working mainly in Greenville and then in 1994 moving to Florida and running a business there, he essentially became an absentee co-owner.  Kelly, along with manager Paul Caughman, ran the day-to-day operations of the corporation.  According to Elgin, Kellys duties with the corporation included administering payroll, including deductions for the employees and compiling the corporations quarterly and yearly federal and state tax returns.  This compiled tax information was then to be provided to the corporations accountant for filing with the state and federal governments.  Elgin claimed that Kelly showed him phony documentation indicating that she had been providing the information to the accountant.  Kelly stated that although it was her duty to compile the tax information, she would provide that information to Elgin and he was supposed to provide it to the accountant.  
In July of 1998, Elgin discovered under Kellys kitchen sink 10-12 bank statements, which revealed discrepancies in the corporate records.[2]  Kelly had written checks to herself for amounts exceeding that which she had recorded in the check register.  Kelly stated she would cash the checks and the cash would go to Elgin.  
On October 6, 1998, after being alerted that Kelly had taken a piece of mail into the restroom, Elgin found a letter from the Internal Revenue Service (IRS), which had been ripped up and put in the restroom trash by Kelly.  Elgin brought the IRS letter to his accountant and demanded to know what was going on.  The accountant informed Elgin that he had not filed a tax return for him in years.  The accountant discovered that the corporation had not filed a tax return with the IRS since 1990 and owed approximately $572,000 in back taxes and over $1,000,000 in interest and penalties.  An employee of the corporation testified and provided documentation that although taxes were withheld from his pay checks, the corporation never paid those taxes on his behalf.  In addition, Elgin discovered that the corporation was dissolved by the state in October of 1994 for failure to file proper paperwork.  Both parties testified that they were unaware of this dissolution, and they had continued to operate as a corporation.  
Elgin brought the present action seeking a temporary restraining order and temporary and permanent injunctions to enjoin Kelly from visiting the business property or taking any actions regarding the finances or business affairs of the business.  The court granted the temporary restraining order the day Elgin filed the complaint.  Kelly answered and counter-claimed contending Elgin had breached his fiduciary duty to the corporation. She requested an involuntary dissolution of the corporation, an accounting of the corporations assets at the time of her ouster, and the appointment of a receiver. [3]   
Elgin also filed bankruptcy for the corporation.  Once bankruptcy was filed, the bankruptcy court took possession of all of the corporate assets and sold the equipment at auction.[4]  The bankruptcy court subsequently discharged the case from bankruptcy because Elgin lacked authority to file the action unilaterally. [5]   
Kelly filed an objection to payment of the bankruptcy trustees fees and moved that Elgin be required to pay the trustees fees as a sanction for bringing the action ultra vires.  The bankruptcy court found that Kelly did not come before the court with clean hands, failed to cooperate with the trustee, and only objected to the proceeding after the majority of the assets were liquidated.  Thus, it held Kelly was estopped and barred by the doctrine of laches from objecting to the payment of the trustees fees.  The bankruptcy court further found that although Elgins unilateral filing for bankruptcy was improper, there was no evidence that he engaged in any act that would rise to a level of contempt and declined to order Elgin to pay the trustees fees.  
After court fees and trustees fees were deducted from the proceeds of the sale, the remainder of the money was returned to Elgin.  Elgin testified that he utilized approximately $53,000 of the $71,038.08 that was returned to him by the bankruptcy court to pay his accountant and the IRS and to pay the costs of defending the corporation in the bankruptcy proceeding and the present action.  He also admitted that he used some of this money for moving expenses and to set up his living arrangements in Columbia when he moved from Florida.  The remaining $18,000 is now in Elgins attorneys trust account.  
After the discharge of the bankruptcy case, the present case came to trial with the legal matters presented to the jury and the equitable claims retained by the trial court.  The jury answered a special interrogatory finding that Kelly had an ownership interest in the corporation.  In its initial verdict, the jury found for Kelly, on behalf of the corporation, on the claim of breach of fiduciary duty but awarded no damages.  The trial court found the verdict was inconsistent and resubmitted the issue to the jury.  The jury quickly found in favor of Elgin.  Kelly filed a motion for a new trial absolute, which the trial court denied.  
In considering the equitable issues, the trial court held Elgin was not entitled to an injunction restraining Kelly from entering the business, finding there was no evidence Kelly had threatened to destroy business records.  The court denied the request for appointment of a receiver, finding such an appointment unnecessary.  The court also denied Kellys request for an accounting, holding that the jurys determination that Elgin had not breached his fiduciary duty, while not binding as to the resolution of the issue, was supported by the evidence.  The court noted both parties had unclean hands but found the assets of the corporation had to be distributed and thus ordered the remaining assets be distributed to each shareholder on a pro rata basis.  The court subsequently denied Kellys motion to vacate or alter or amend the judgment.  This appeal followed.  
LAW/ANALYSIS
I.  Refusal to Grant a New Trial
Kelly contends the trial court erred in refusing to grant a new trial absolute.[6]  We disagree.
The decision to grant a new trial is left to the sound discretion of the trial court and ordinarily will not be disturbed on appeal.  Rush v. Blanchard, 310 S.C. 375, 380, 426 S.E.2d 802, 805 (1993).  
After deliberating for almost two hours, the jury returned a verdict.  The jury found that Kelly had an ownership interest in the corporation and that Elgin had breached his fiduciary duty to the corporation, but the jury did not award any damages on behalf of the corporation.  The trial court, without comment from the parties, informed the jury that this verdict was inconsistent.  The court again explained the charge of breach of fiduciary duty to the jury and instructed them to further deliberate to either find no breach of fiduciary duty or to award damages if there was a breach.  The jury returned to the courtroom five minutes later and rendered a verdict in favor of Elgin finding that there was no breach of fiduciary duty.  Kelly submitted a post-trial motion requesting a new trial absolute.  
Kelly argues that it was improper for the trial court to sua sponte instruct the jury on the inconsistent verdict.  After the trial court instructed the jury regarding the inconsistent verdict, it specifically asked the parties if they had any exceptions to the instructions it gave, and both parties stated that they had no objections.  Furthermore, in her motion for a new trial absolute, Kelly acknowledged, Here, the Court properly resubmitted the case to the jury.  Accordingly, this issue is not preserved for appeal.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.).    
Kelly further contends that the jury did not follow the trial courts instruction to deliberate further.  She asserts that only five minutes elapsed between the instruction and the time at which the jury reached its second verdict.  
The jury had deliberated for almost 2 hours prior to rendering its first verdict and quickly reached a second verdict after a thorough instruction by the trial court.[7]  There is no prescribed length of time for a jury to reach a verdict and such must of necessity be left to the judgment of the jury.  State v. Dewitt, 254 S.C. 527, 534, 176 S.E2d 143, 147 (1970).  Something more must appear, therefore, to warrant interference with a jurys verdict than the mere brevity of their deliberations.  Id.  The record contains no indication that the jury shirked its duty to engage in deliberations in arriving at this verdict.  We find no abuse of discretion by the trial court in accepting the jurys verdict. 
II.  Accounting and Appointment of a Receiver
Kelly contends that the trial court erred by refusing to appoint a receiver and failing to order an accounting with respect to the assets of the corporation at the time of her ouster, and by ordering that only the assets remaining at the time of trial be divided between the parties pro rata.[8]
Legal and equitable actions, when maintained in one suit, each retain
their own identity for purposes of the applicable standard of review on appeal.  Jordan v. Holt, 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005).  Dissolution of a corporation, appointment of a receiver, and an accounting are actions in equity.  Jordan, 362 S.C. at 205, 608 S.E.2d at 131 (dissolution); Rogers v. Salisbury Brick Corp., 299 S.C. 141, 144, 382 S.E.2d 915, 917 (1989) (accounting); Wadsworth Industries, Inc. v. Westgate Knitting, Inc., 264 S.C. 106, 109, 212 S.E.2d 571, 572 (1975) (appointment of receiver).  Accordingly, this court may find facts in accordance with its own view of the preponderance of the evidence.  Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976) (in equity case appellate court may take its own view of the preponderance of the evidence).  However, we are not required to disregard the findings below nor ignore the better vantage point the trial judge occupied in determining witness credibility.  Cherry v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).  
Elgin asserts Kellys claim for an accounting is barred by the doctrine of unclean hands.  As the trial court held, Elgin, as well as Kelly, came to this matter with unclean hands.  Although Elgin received $71,038.08 from the bankruptcy court, he only had $18,000 remaining to deposit into his lawyers trust account.  Elgin testified he used a portion of the funds to repay himself for expenses he incurred defend[ing] these cases.  However, he submitted no bills or any checks evidencing expenses he legitimately incurred on the corporations behalf.  He also stated he used a portion of the funds returned by the bankruptcy court to pay the IRS.  However, his accountant testified that as far as he knew, no corporate tax liability had been paid.  Thus, Elgin may have used a portion of the corporate funds to pay his personal tax liability.  In addition, Elgin admitted that he had used a portion of the funds for personal moving expenses and to establish a new residence when he moved from Daytona, Florida back to South Carolina.  Because the evidence indicates Elgin used corporate funds for personal expenses, we find Kelly is entitled to an accounting.  
We disagree with Kellys assertion that the appointment of a receiver is necessary.  In a corporate dissolution action, a court may appoint a receiver to wind up and liquidate . . . the business and affairs of the corporation.  S.C. Code Ann. § 33-14-320(a) (2005).  In this case, the corporation has already been dissolved, there is no business to wind up, and all corporate assets have been liquidated.  We agree with the trial court that the appointment of a receiver is unnecessary.  
CONCLUSION
We hold the trial court did not abuse its discretion in refusing to grant a new trial.  We also affirm the trial courts denial of Kellys request for appointment of a receiver.  However, we REVERSE the trial courts denial of Kellys request for an accounting and REMAND for further proceedings consistent with this opinion.  
AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
 HEARN, C.J., and HUFF and BEATTY, JJ., concur.  

[1] No stock certificate for this transfer in ownership was ever created, and there was no documentation of Kellys ownership.  
[2] Elgin testified that when he confronted Kelly regarding these discrepancies, she offered no explanation and at one point, signed over her 50% interest in the corporation to him for no consideration.  Even after this event took place, both parties admit that they continued to operate as co-owners. 
[3]Kelly also made other claims including assault and battery and illegal wire tapping, but these claims are not relevant to this appeal.
[4]Kelly still possessed a corporately-owned automobile that was not surrendered to the bankruptcy court. 
[5]The bankruptcy court noted the corporate book listed Claude R. Rogers as owner of 500 shares of stock.  Elgin explained the listed owner had planned to buy into the corporation prior to Kellys co-ownership and Elgin had changed the corporate records.  However, the transaction fell through and Rogers never bought into the company.
[6] Elgin asserts Kelly failed to timely file her Rule 59, SCRCP, motion and thus the circuit court and this court lack jurisdiction to consider the issues raised in the motion.  We find Kelly in fact timely served and filed her motion and sent a copy of the motion to the trial judge in accordance with Rule 59.   In addition, we find Kellys notice of appeal was sufficient to confer jurisdiction on all issues raised in this appeal.  
[7] It should be noted that if the jury quickly reached a second verdict because they felt pressed for time (as Kelly asserts), they could have awarded some amount of damages to Kelly just as quickly as they found for Elgin.
[8] Elgin asserts this issue is not preserved because Kelly did not raise any specific arguments in her post-trial motion.  Kellys request for appointment of receiver and an accounting were presented to the trial court and ruled on in the order of August 4, 2004.  Thus, the issue is preserved.  See Wilder Corp., 330 S.C. at 77, 497 S.E.2d at 734 (Post-trial motions are not necessary to preserve issues that have been ruled upon at trial; they are used to preserve those that have been raised to the trial court but not yet ruled upon by it.).