605 S.E.2d 551

B & A DEVELOPMENT, INC.; Baker–Haynes, LLC; H & C Fishers, Inc.; Charles C. Smith; James P. Mayes, III; Barry C. Haynes; Rachelle H. Hayes; Samuel H. Baker; Jody J. Baker; Andrew D. Smith; G.D. Rogers; Mary G. Collins; Individually and as Class Representative for all those similarly situated, Appellants,

v.

GEORGETOWN COUNTY, a Body Politic; Georgetown County Council; Georgetown County School District; Edna Earle Freeman in her capacity as Georgetown County Auditor; and Loretta D. Washington, in her capacity as Georgetown County Treasurer, Respondents.

No. 3877.

Court of Appeals of South Carolina.

Submitted Sept. 15, 2004.

Decided Oct. 25, 2004.

Rehearing Denied Dec. 16, 2004.

Gene M. Connell, Jr., of Surfside Beach, for Appellants.

David J. Mills and Thomas J. Rubillo, both of Georgetown and David T. Duff, of Columbia, for Respondents.

KITTREDGE, J.:

In this case, a group of Georgetown County taxpayers brought action in circuit court alleging the County had imposed excessive, unlawful taxes on their real and personal property. These taxpayers sought relief in the form of a refund or tax credit. The circuit court dismissed the taxpayers' case on the grounds they had failed to exhaust the administrative remedies prescribed under the South Carolina Revenue Procedures Act (RPA or "the Act") (S.C.Code Ann. §§ 12–60–10 to –3390 (2000 & Supp. 2003)). The taxpayers now appeal, arguing the RPA does not apply to their claims. We affirm.

## FACTS/PROCEDURAL HISTORY

The taxpayers who brought this case are twelve corporate and individual Georgetown County residents (hereinafter the "Taxpayers"). Styling the suit a class action on behalf of themselves and others similarly situated, Taxpayers brought this suit against several governing bodies and officers of the County—naming as defendants Georgetown County, members of the County Council, the County Auditor, the County Trea-

surer, as well as the Georgetown County School District. In their complaint, Taxpayers claimed the County had imposed an illegal levy of millage rates, resulting in unlawfully excessive taxation of their real and personal property. The specific allegations center around the assessment of public money to fund the School District.

In Georgetown County, the amount of the annual property tax assessment depends to a large degree on the amount of money the School District determines it needs for operations in the coming the year. The process is straightforward: After the School District prepares its budget, the County auditor sets the tax rate, expressed in mills, to provide the necessary revenue to fund School District operations.

Taxpayers contend the County has levied upon property owners a higher millage rate than was needed to supply the revenue requested by the School District. Taxpayers allege this excess tax has created an illegal surplus each year from approximately 1991 until the time this lawsuit was filed in 2001. They claim the cumulative amount of the surplus collections exceeds $28 million.

Taxpayers brought their suit for the wrongful collection of taxes in the circuit court. The circuit court granted motions to dismiss filed by the County and School District, concluding the RPA requires Taxpayers to exhaust their administrative remedies under the Act. Therefore, as prescribed by the RPA, the circuit court dismissed the case without prejudice. *See* S.C.Code Ann. § 12–60–3390 (Supp. 2003). A subsequent motion to reconsider filed by the Taxpayers was denied. This appeal followed.

### *LAW/ANALYSIS*

### I.  Applicability of the RPA

■ Taxpayers first argue the RPA does not apply to their cause of action for illegal taxation against the County. We disagree.

The RPA prescribes the procedures for resolving claims for the wrongful collection of taxes in our state.[1] The language of

---

1. In 1995, the Legislature adopted the RPA with the express legislative intent "to provide the people of this State with a straightforward

its operative provisions signals the Act's broad and comprehensive application. Specifically, section 12–60–80 of the RPA provides "there is no remedy other than those provided in this chapter *in any case* involving the illegal or wrongful collection of taxes, or attempt to collect taxes." S.C.Code Ann. § 12–60–80(A) (Supp. 2003) (emphasis added).[2] The only exception to this mandate is for "action[s] for a declaratory judgment where the sole issue is whether a statute is constitutional." § 12–60–80(B); *see also Evans v. State*, 344 S.C. 60, 66, 543 S.E.2d 547, 550 (2001) ("Recognizing the separation of powers doctrine prohibits an agency and ALJ from ruling on the constitutionality of a statute, [the court] concluded § 12–60–3390 was inapplicable 'where the sole issue [was] whether a statute or other legislative action is constitutional.'") (quoting *Ward v. State*, 343 S.C. 14, 20, 538 S.E.2d 245, 248 (2000)).[3]

Taxpayers, however, contend their cause of action for illegal taxation arises under a statute that is not subject to the administrative and adjudicatory processes prescribed under the RPA. They claim their substantive right and remedy arise exclusively under South Carolina Code section 12–43–285. This statute was enacted as part of the South Carolina County

procedure to determine *any disputed revenue liability*." S.C.Code Ann. § 12–60–20 (2000) (emphasis added). In 2000, the Legislature substituted the phrase "dispute with the Department of Revenue" for "any disputed revenue liability" in § 12–60–20. *See* § 12–60–20 (Supp. 2003). Our supreme court has noted that this alteration did not affect the applicability of the RPA to county tax protest procedures:

> Although this amendment could be read as indicative of an intent to limit the Act to tax issues involving the DOR, when amending § 12–60–20 the legislature did not amend or repeal those parts of the Act which deal solely with county tax disputes. In light of this, we hold that a court must look first to the Act when faced with a question of county tax protest procedures.

*Brackenbrook North Charleston, LP v. County of Charleston*, 360 S.C. 390, 395, 602 S.E.2d 39, 42 (2004).

2. We also note that recent amendments to § 12–60–80 provide that "a claim or action for the refund of taxes may not be brought as a class action in the Administrative Law Judge Division or any court of law in this State. . . ." § 12–60–80(C) (Act No. 69, 2003 S.C. Acts 744).

3. Taxpayers do not challenge the facial constitutionality of the RPA. Consequently, the declaratory judgment exception pursuant to *Evans v. State* does not apply, and Taxpayers so concede, for they only dispute the constitutionality of the RPA as applied to them.

Equalization and Reassessment Act (S.C.Code Ann. §§ 12–43–210 to –360 (2000 & Supp. 2003)), a law designed to ensure all property is taxed uniformly and equitably by assessing officials in the state. *See* § 12–43–210. Under the heading "Certification of millage rates; excessive rates," section 12–43–285 provides, in pertinent part:

> If a millage rate is in excess of that authorized by law, the county treasurer shall either issue refunds or transfer the total amount in excess of that authorized by law, upon collection, to a separate, segregated fund, which must be credited to taxpayers in the following year as instructed by the governing body of the political subdivision on whose behalf the millage was levied.

S.C.Code Ann. § 12–43–285(B) (Supp. 2003).

■ Taxpayers argue section 12–43–285 entitles them to bring action directly in circuit court. We disagree. This statute was enacted by the Legislature in 2001—six years after the enactment of the RPA. *See* Act No. 89, 2001 S.C. Acts 2070 (enactment of § 12–43–285); Act No. 60, 1995 S.C. Acts 362 (enactment of RPA). It is a well-established principle of statutory interpretation that subsequent legislation should be construed in harmony with existing laws. *See Hodges v. Rainey,* 341 S.C. 79, 88, 533 S.E.2d 578, 583 (2000) (holding that "[s]tatutes dealing with the same subject matter must be reconciled, if possible, so as to render both operative"); *Justice v. Pantry,* 330 S.C. 37, 43–44, 496 S.E.2d 871, 874 (Ct.App.1998) (opining that "[i]t is presumed that the Legislature [is] familiar with prior legislation . . . hence, if by any fair or liberal construction two acts may be made to harmonize, no [c]ourt is justified in deciding that the last repealed the first") (quoting *State v. Hood,* 181 S.C. 488, 491, 188 S.E. 134, 136 (1936)). Neither section 12–43–285 nor any other provision of the County Equalization and Reassessment Act indicates a legislative intent to override or supplant the exclusive remedy provisions of the RPA.

Indeed, section 12–43–285 is silent regarding the forum in which an action may be pursued under its provisions. The RPA, on the other hand, provides explicit remedial procedures for taxpayers pursuing claims for allegedly wrongful real and personal property taxes assessed by county governments.

The Act provides that a taxpayer may contest real property taxes assessed by the county assessor by filing a claim for refund with the assessor and provides a right of appeal to the Administrative Law Judge Division. S.C.Code Ann. § 12–60–2560 (2000). The same basic procedures for taxpayers contesting a county's personal property tax assessment are also provided for under the RPA. *See* S.C.Code Ann. § 12–60–2940 (2000).

■ Our supreme court further clarified the scope of the administrative remedies available to taxpayers under the RPA in *Brackenbrook North Charleston, LP v. County of Charleston*, 360 S.C. 390, 602 S.E.2d 39 (2004). In that case, the plaintiff taxpayers brought an action in circuit court alleging Charleston County levied an excessive millage rate on real property. The circuit court allowed the taxpayers' judicial action, finding the taxpayers had no administrative remedies under the RPA because the Act did not cover taxpayer challenges to the county's millage rate determination. The circuit court concluded the RPA's mandated administrative remedies only applied to taxpayer challenges to a county's "property tax assessment" (PTA).[4] Because the taxpayers in *Brackenbrook* did not dispute any component of their PTA, the circuit court held the taxpayers had an immediate right of judicial action. The supreme court reversed, holding that:

> While the Act contains many specific procedures for taxpayers challenging their PTAs, relief under the Act is not limited to these types of protests. Section 12–60–2530(A) specifically provides the board of assessment appeals may rule on any PTA dispute "and also other relevant claims of a legal or factual nature except claims relating to property tax exemptions."
>
> . . . .

---

4. The PTA for each parcel of taxable real estate in a county is determined by multiplying the property's fair market value or special use value by the appropriate assessment ratio. S.C.Code Ann. § 12–60–30(19) (Supp.2003). This PTA figure is then multiplied by the taxing district's millage rate, resulting in the tax assessment, that is, the dollar amount owed by the taxpayer for that year. *See Brackenbrook*, 360 S.C. at 392–93, 602 S.E.2d at 41.

Looking first to the Act, as we must, we hold that Taxpayers' remedy is not this direct circuit court refund suit, but rather an administrative refund pursuant to § 12–60–2560.

*Id.* at 398, 399, 602 S.E.2d at 44 (footnote omitted). As interpreted by our supreme court, therefore, the RPA's administrative procedures and remedies are not limited to a narrow class of taxpayer suits. Rather, the Act's provisions are sufficiently expansive to include any "relevant claims of a legal or factual nature." The RPA therefore vests county administrative bodies with jurisdiction to hear and decide in the first instance a broad range of taxpayer suits.

Accordingly, section 12–43–285 does not supplant the remedial scheme of the RPA. Had the Legislature intended to allow for direct action in circuit court—in contravention of the broadly defined scope of the RPA—it could have expressly provided for such immediate judicial review.

## II. Constitutionality of the RPA's Remedies

■ Taxpayers alternatively claim they should be excused from the requirement to exhaust administrative remedies under the RPA because the Act as applied does not provide them a constitutionally adequate remedy under the facts of this case. We disagree.

In *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the United States Supreme Court held due process requires that all taxpayers must have a "clear and certain" remedy for taxes collected in violation of law. *Id.* at 39, 110 S.Ct. 2238. The Supreme Court has noted, however, that *McKesson* affords great flexibility to the states in satisfying these due process requirements, allowing states to "determine whether to provide a predeprivation process (*e.g.,* an injunction) or instead to afford postdeprivation relief (*e.g.,* a refund)." *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 587, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *see also Reich v. Collins,* 513 U.S. 106, 110–11, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994) (holding that "[d]ue process ... allows the State to maintain an exclusively postdeprivation regime ... or a hybrid regime. A State is free as well to reconfigure its remedial scheme over time, to fit its changing needs. Such

choices are generally a matter only of state law.") (citation omitted).

As discussed above, sections 12–60–2560 (real property) and 12–60–2940 (personal property) of the RPA provide Taxpayers with a comprehensive postdeprivation procedure (claim for refund) to contest the taxes assessed by the County. Taxpayers offer no valid reason why they could not initiate a claim for a refund of the taxes paid by following the procedures prescribed under these statutes.

Taxpayers argue the circuit court erred in finding a constitutionally sufficient "clear and certain" remedy is available under the RPA. This contention is premised on Taxpayers' claim that they could not bring an action against the School District under the Act in the Administrative Law Judge (ALJ) Division. After the circuit court dismissed this suit without prejudice in January 2003, Taxpayers brought their action before the ALJ Division and did not name the School District as a party. Taxpayers then filed a motion to reconsider with the circuit court, claiming they had been "advised" that the School District could not be made a party "under the current statutory scheme for refunds of property taxes." Therefore, Taxpayers argue, the RPA fails to provide them a clear and certain remedy because they are prevented from pursuing their claims against the School District—the party they allege "has all of the taxes which [Taxpayers] assert are illegal."

We reject this argument as meritless. As revealed in the transcript of the circuit court hearing on the motion to reconsider, Taxpayers apparently received this "advice" from an unidentified employee in the office of the clerk of court in the ALJ Division. It hardly bears noting that the purported opinion of the ALJ clerk's office does not determine who may or may not be sued in our state's adjudicatory forums. Determining proper parties is a judicial function, not a clerk's function. There is nothing in the statutes that precluded Taxpayers from naming the School District or any other governmental subdivision with taxing authority. Taxpayers' purposeful decision not to include the School District in their complaint before the ALJ Division is a transparent attempt to create the illusion that the RPA and ALJ procedures do not provide a clear and certain remedy. Moreover, the record

before us shows that the School District has successfully intervened and joined the ALJ action as a necessary party and that the School District is bound by that litigation.

We conclude the RPA provides a clear and certain remedy in the form of a post-deprivation process for Taxpayers to bring their action against the County and School District, therefore passing constitutional muster under *McKesson* and *National Private Truck Council.*

### III. Novel Issue Rule

■ Taxpayers also argue the circuit court erred by deciding a novel issue on a Rule 12(b), SCRCP, motion to dismiss. They contend the nature of the issues presented in this case warranted further factual development before a dispositive ruling. We disagree.

■ As a general rule, our courts are reluctant to decide important questions of novel impression on a motion to dismiss before the parties have had an opportunity to fully develop the factual record. *Evans v. State,* 344 S.C. 60, 68, 543 S.E.2d 547, 551 (2001). Instead, "[a] novel issue ... is best decided in light of the testimony to be adduced at trial." *Tyler v. Macks Stores of South Carolina, Inc.,* 275 S.C. 456, 459, 272 S.E.2d 633, 634 (1980). "However, where the dispute is not as to the underlying facts but as to interpretation of the law, and development of the record will not aid in the resolution of the issues, it is proper to decide even novel issues on a motion to dismiss for failure to state a claim." *Evans,* 344 S.C. at 68, 543 S.E.2d at 551.

The overarching issue in this case is whether the exclusive remedy provisions of the RPA govern the dispute resolution process in adjudicating Taxpayers' claims. This issue is purely a question of law. Therefore, we find further development of the factual record would not aid in determining the statutory and constitutional questions raised. The circuit court therefore acted appropriately in deciding this issue on a motion to dismiss.

### *CONCLUSION*

We find the Taxpayers must exhaust their administrative remedies provided under the RPA before their suit for illegal

taxation can receive judicial review. Taxpayers' arguments that the RPA does not apply to their action and that the RPA is unconstitutional as applied in this case are unpersuasive. Furthermore, we find the circuit court disposition of this matter on a motion to dismiss was proper. Accordingly, the order of the circuit court dismissing Taxpayers' case without prejudice is

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.