641 S.E.2d 888

B & A DEVELOPMENT, INC.; Baker–Haynes, LLC; H & C Fishers, Inc.; Charles C. Smith; James P. Mayes, III; Barry C. Haynes; Rachelle H. Hayes; Samuel H. Baker; Jody J. Baker; Andrew D. Smith; G.D. Rogers; Mary G. Collins; Individually and as Class Representative for all those similarly situated, Petitioners,

v.

GEORGETOWN COUNTY, a Body Politic; Georgetown County Council; Georgetown County School District; Edna Earle Freeman in her capacity as Georgetown County Auditor; and Loretta D. Washington, in her capacity as Georgetown County Treasurer, Respondents.

No. 26273.

Supreme Court of South Carolina.

Heard Jan. 17, 2007.

Decided Feb. 26, 2007.

Rehearing Denied March 22, 2007.

262

Gene M. Connell, Jr., of Kelaher, Connell & Connor, of Surfside Beach, for Petitioners.

David J. Mills, of McNair Law Firm, of Georgetown; David T. Duff, of Duff Turner White & Boykin, of Columbia; and Thomas J. Rubillo, of Georgetown, for Respondents.

Justice WALLER:

The Court granted petitioners' request for a writ of certiorari to review the Court of Appeals' opinion in *B & A Dev., Inc. v. Georgetown County,* 361 S.C. 453, 605 S.E.2d 551 (Ct.App.2004). We affirm as modified.

## FACTS

Petitioners are a group of individual and corporate taxpayers who filed suit in circuit court alleging that Georgetown County had unlawfully imposed excessive taxes on their real and personal property. Petitioners sought relief in the form of a refund or tax credit. Regarding the underlying facts alleged by petitioners, the Court of Appeals appropriately summarized as follows:

In Georgetown County, the amount of the annual property tax assessment depends to a large degree on the amount of money the School District determines it needs for operations in the coming [ ] year. The process is straightforward: After the School District prepares its budget, the County auditor sets the tax rate, expressed in mills, to provide the necessary revenue to fund School District operations.

[Petitioners] contend the County has levied upon property owners a higher millage rate than was needed to supply the revenue requested by the School District. [Petitioners] allege this excess tax has created an illegal surplus each year from approximately 1991 until the time this lawsuit

was filed in 2001. They claim the cumulative amount of the surplus collections exceeds $28 million.

*B & A Dev.*, 361 S.C. at 456, 605 S.E.2d at 552.

Essentially, therefore, petitioners alleged a case of excessive millage; in addition, they captioned the case as a class action. The circuit court dismissed the action, without prejudice, because petitioners had failed to exhaust their administrative remedies under the South Carolina Revenue Procedures Act (the RPA).[1] On appeal, the Court of Appeals found that the RPA applied to petitioners' claims and therefore affirmed the circuit court's dismissal. *B & A Dev., supra.*

## ISSUES

1. Did the Court of Appeals err by affirming the circuit court's decision that petitioners are required to exhaust their administrative remedies under the RPA?

2. Have the rights of the class action plaintiffs been compromised by the Court of Appeals' opinion?

## DISCUSSION

### 1.  Applicability of the RPA

Petitioners raise the following arguments as to why the Court of Appeals erred in finding the RPA applies to the instant case: (1) their dispute is with the Georgetown County School District, not the Department of Revenue; (2) S.C.Code Ann. section 12–43–285, specifically dealing with excessive millage rates, entitles a taxpayer to bring an action directly in circuit court; and (3) excessive millage claims were not thought to be properly brought under the RPA until the Court's decision in *Brackenbrook N. Charleston, LP v. County of Charleston*, 360 S.C. 390, 602 S.E.2d 39 (2004). In addition, petitioners claim that the RPA does not provide taxpayers with a clear and certain remedy, and therefore, the Court of Appeals erred in finding that their claim did not challenge the constitutionality of the RPA. Finally, petitioners assert that the law was unclear before *Brackenbrook* and that the decision

---

1.  S.C.Code Ann. § 12–60–10 *et seq.* (2000 & Supp. 2006).

should only be applied prospectively. In our opinion, however, the lower courts correctly decided that the RPA applies.

The RPA was enacted in 1995; the express intent of the Act states as follows: "It is the intent of the General Assembly to provide the people of this State with a straightforward procedure to determine any dispute with the Department of Revenue. The [RPA] must be interpreted and construed in accordance with, and in furtherance of, that intent." S.C.Code Ann. § 12–60–20 (Supp. 2006). Furthermore, the RPA clearly states "there is no remedy other than those provided in this chapter **in any case involving the illegal or wrongful collection of taxes,** or attempt to collect taxes." S.C.Code Ann. § 12–60–80(A) (Supp. 2006) (emphasis added). Indeed, the RPA specifies that if a taxpayer brings an action under the Act in circuit court, "the circuit court shall dismiss the case without prejudice." S.C.Code Ann. § 12–60–3390 (Supp. 2006). The only exception to the exclusivity of administrative remedy is that an action for a declaratory judgment may be brought in circuit court "where the sole issue is whether a statute is constitutional;" this exception, however, does not apply to a claim that the statute is unconstitutional "as applied." *Id.* § 12–60–80(B); *see also Ward v. State,* 343 S.C. 14, 538 S.E.2d 245 (2000) (because an administrative law judge cannot rule on the constitutionality of a statute, a declaratory judgment action seeking to determine whether a statute is constitutional should not be dismissed by the circuit court).

In *Brackenbrook,* which also involved a claim of excessive millage, this Court stated that although the RPA contains many procedures for taxpayers challenging their property tax assessments, "relief under the Act is not limited to these types of protests." *Brackenbrook,* 360 S.C. at 398, 602 S.E.2d at 44. Specifically, the Brackenbrook Court noted that the RPA allows a taxpayer to seek a refund of paid taxes under section 12–60–2560;[2] therefore, the Court held that the taxpayers'

---

2. Section 12–60–2560, states as follows in pertinent part:

(A) Subject to the limitations in Section 12–60–1750, and within the time limitation of Section 12–54–85(F), a property taxpayer may seek a refund of real property taxes assessed by the county assessor and paid, other than taxes paid on property the taxpayer claims is exempt, by filing a claim for refund with the county assessor who made the property tax assessment for the property for which the tax refund is

remedy was not a "direct circuit court refund suit, but rather an administrative refund" pursuant to section 12–60–2560. *Id.* at 398–99, 602 S.E.2d at 44.

This case is not distinguishable from *Brackenbrook*, and thus, the Court of Appeals properly affirmed the circuit court's dismissal of the action pursuant to section 12–60–3390. Petitioners allege that Georgetown County collected both real and personal property taxes based upon an excessive millage rate thereby resulting in an overcollection of taxes allocated to the school district. The RPA provides an administrative remedy in the form of a refund for both real and personal property taxes. *See* S.C.Code Ann. §§ 12–60–2560, 12–60–2940 [3] (2000). Thus, pursuant to both *Brackenbrook* and the

---

sought. The assessor, upon receipt of a claim for refund, shall immediately notify the county treasurer and the county auditor for the county from which the refund is sought. The majority of these three officials shall determine the taxpayer's refund, if any, and shall notify the taxpayer in writing of their decision.

(B) Within thirty days after the decision is mailed to the taxpayer on the claim for refund, a property taxpayer may appeal the decision to the county board of assessment appeals....

(C) Within thirty days after the board's decision is mailed to the taxpayer, a property taxpayer or county assessor may appeal the decision issued by the board by requesting a contested case hearing before the Administrative Law Judge Division.... If a taxpayer requests a contested case hearing before the Administrative Law Judge Division without exhausting his prehearing remedy ..., the Administrative Law Judge shall dismiss the action without prejudice.

3. Section 12–60–2940, entitled "Claim for refund of personal property tax; request for contested case hearing following denial of claim." states the following, in relevant part:

(A) Subject to the limitations in Section 12–60–1750, and within the time limitation of Section 12–54–85(F), a property taxpayer may seek a refund of property taxes assessed by the county auditor and paid, other than taxes paid on property the taxpayer claims is exempt unless the exemption is the homestead exemption, by filing a claim for refund with the county auditor who made the personal property tax assessment on the property for which the tax refund is sought. The auditor upon receipt of a claim for refund shall immediately notify the county treasurer and county assessor. A majority of these three officials shall determine the taxpayer's refund, if any, and shall notify the taxpayer in writing of their decision.

(B) A taxpayer may appeal the decision by requesting a contested case hearing before the Administrative Law Judge Division in

plain language of the RPA, *see* §§ 12–60–20 & 12–60–80, petitioners must exhaust their administrative remedies before proceeding to circuit court.

Accordingly, the Court of Appeals properly affirmed the dismissal.

■ We now turn to petitioners' specific arguments and address them briefly. First, petitioners attempt to distinguish their county-based tax suit from the RPA's language regarding "any dispute with the Department of Revenue." § 12–60–20. With respect to this contention, the Court of Appeals stated the following:

In 1995, the Legislature adopted the RPA with the express legislative intent "to provide the people of this State with a straightforward procedure to determine **any disputed revenue liability.**" S.C.Code Ann. § 12–60–20 (2000) (emphasis added). In 2000, the Legislature substituted the phrase "dispute with the Department of Revenue" for "any disputed revenue liability" in § 12–60–20. *See* § 12–60–20 (Supp. 2003). Our supreme court has noted that this alteration did not affect the applicability of the RPA to county tax protest procedures:

Although this amendment could be read as indicative of an intent to limit the Act to tax issues involving the DOR, when amending § 12–60–20 the legislature did not amend or repeal those parts of the Act which deal solely with county tax disputes. In light of this, we hold that a court must look first to the Act when faced with a question of county tax protest procedures.

*B & A Dev.,* 361 S.C. at 457 n. 1, 605 S.E.2d at 553 n. 1 (quoting *Brackenbrook,* 360 S.C. at 395, 602 S.E.2d at 42). Looking at the RPA, we find the Act clearly envisions protests to county assessments. *See, e.g.,* S.C.Code Ann. §§ 12–60–30, 12–60–2560, 12–60–2940 (including definitions and references to county auditor, county assessor, and county board of assess-

accordance with its rules within thirty days of the written denial of the claim for refund.

(C) If a taxpayer requests a contested case hearing before the Administrative Law Judge Division without exhausting his prehearing remedy because he failed to file a claim for refund, the Administrative Law Judge shall dismiss the action without prejudice.

ment appeals). In addition, as noted by the Court of Appeals, the *Brackenbrook* decision itself provides clear support that a county-based excessive millage claim may not be initiated in circuit court.

■ Second, petitioners argue that because they are basing their lawsuit on S.C.Code Ann. section 12–43–285, the RPA does not apply. This section states in relevant part:

If a millage rate is in excess of that authorized by law, the county treasurer shall either issue refunds or transfer the total amount in excess of that authorized by law, upon collection, to a separate, segregated fund, which must be credited to taxpayers in the following year as instructed by the governing body of the political subdivision on whose behalf the millage was levied. An entity submitting a millage rate in excess of that authorized by law shall pay the costs of implementing this subsection or a pro rata share of the costs if more than one entity submits an excessive millage rate.

S.C.Code Ann. § 12–43–285(B) (Supp. 2006). While section 12–43–285 clearly would apply to petitioners' lawsuit if they prevail on the merits, this section goes more to the manner of remedy rather than procedure.

■■ Furthermore, we note that section 12–43–285 was enacted in 2001 and applies to property tax years beginning after December 31, 1999. Therefore, the RPA was already in effect at the time this section became law. It is well settled that the law "does not favor the implied repeal of statute," and "[s]tatutes dealing with the same subject matter must be reconciled, if possible, so as to render both operative." *Hodges v. Rainey*, 341 S.C. 79, 88, 533 S.E.2d 578, 583 (2000) (citing *Butler v. Unisun Ins.*, 323 S.C. 402, 475 S.E.2d 758 (1996)).

Given that the exhaustion of administrative remedy requirement of the RPA covers "any case involving the illegal or wrongful collection of taxes," § 12–60–80(A), and section 12–43–285 deals with excessive millage, these two statutes should be reconciled. *Hodges v. Rainey, supra.* Therefore, rather than interpreting section 12–43–285 as displacing the exhaustion requirement of the RPA and replacing that with a right of direct access to the circuit court, we hold the Court of Appeals properly harmonized these two statutes. Put simply, we agree with the Court of Appeals' observation that "[h]ad the

Legislature intended to allow for direct action in circuit court—in contravention of the broadly defined scope of the RPA—it could have expressly provided for such immediate judicial review." *B & A Dev.*, 361 S.C. at 460, 605 S.E.2d at 554; *see also Buist v. Huggins*, 367 S.C. 268, 276, 625 S.E.2d 636, 640 (2006) (where a statute's language is plain, unambiguous, and conveys a clear meaning, the court has no right to impose another meaning).

■ Third, petitioners claim that *Brackenbrook* was unforeseeable and therefore should be applied prospectively. Because the language of the RPA is so plain, we disagree. As noted above, the original language of the Act stated that the RPA applied to "any disputed revenue liability." S.C.Code Ann. § 12–60–20 (2000). Moreover, the RPA expressly provides that the administrative remedies under the Act are exclusive for "any case involving the illegal or wrongful collection of taxes." § 12–60–80(A).

Additionally, prior to the filing of petitioners' lawsuit, this Court had interpreted the RPA as establishing "administrative procedures for taxpayers who claim a refund of any state tax." *Evans v. State*, 344 S.C. 60, 65, 543 S.E.2d 547, 549 (2001). In *Evans*, the Court held that because the class of state retirees was mounting an "as applied" constitutional challenge, the exhaustion of administrative remedies requirement applied. While the *Evans* case dealt with a state tax issue, rather than a county tax claim, the *Brackenbrook* decision did not establish any new legal principle, but rather interpreted the plain language of the RPA.

Thus, given the plain language of the statute as well as the case law in effect when petitioners filed their complaint, we reject petitioners' contention that the *Brackenbrook* decision regarding the exhaustion doctrine should be prospective.

Finally, petitioners claim that the RPA does not provide a constitutionally adequate, "clear and certain" remedy for their claims. *See McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (where the United States Supreme Court held that due process requires all taxpayers to have a "clear and certain" remedy for taxes collected in violation of law). However, we agree with the Court of Appeals that petitioners have not offered any satisfying reason why the RPA's post-deprivation

refund procedures are **constitutionally** inadequate. *See* S.C.Code Ann. §§ 12–60–2560, 12–60–2940; *see also National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 587, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995) ("the States are afforded great flexibility in satisfying the requirements of due process in the field of taxation").

Petitioners' more specific argument on this point is that the RPA refund sections envision challenges to valuation of property; because this is an excessive millage case, petitioners contend that the RPA does not provide a remedy. As discussed above, however, the Court in *Brackenbrook* rejected the idea that the RPA covers only valuation issues. *Brackenbrook,* 360 S.C. at 398, 602 S.E.2d at 44 (although the RPA contains many procedures for taxpayers to challenge their property tax assessments, relief under the RPA "is not limited to these types of protests").

In sum, we hold the Court of Appeals correctly affirmed the circuit court's ruling that petitioners are required to exhaust their administrative remedies before proceeding to circuit court.

### 2. *Class Action Status*

Petitioners also argue that the Court of Appeals failed "to protect absent class members" by acknowledging, in a footnote, that the RPA was amended in 2003 to expressly disallow class actions.[4] Petitioners further note the following language in the opinion: "Styling[5] the suit a class action on behalf of themselves and others similarly situated, [petitioners] brought this suit against several governing bodies and officers of the County." *B & A Dev.,* 361 S.C. at 455, 605 S.E.2d at 552. More specifically, petitioners contend that because they filed their lawsuit as a putative class action prior to section 12–60–80's amendment, the Court of Appeals erred when it "intimated" that the instant case could not proceed as a class action.

---

**4.** *B & A Dev.,* 361 S.C. at 457 n. 2, 605 S.E.2d at 553 n. 2 ("We also note that recent amendments to § 12–60–80 provide that 'a claim or action for the refund of taxes may not be brought as a class action in the Administrative Law Judge Division or any court of law in this State....'" § 12–60–80(C) (Act No. 69, 2003 S.C. Acts 744)).

**5.** Based on their briefs, we are assuming petitioners object to the use of the verb "style."

The Court of Appeals, however, did not actually make the ruling which petitioners raise to this Court. It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review. *See, e.g., Staubes v. City of Folly Beach*, 339 S.C. 406, 529 S.E.2d 543 (2000). In the instant case, the circuit court neither certified a class nor denied class certification.[6] Moreover, class action status was not presented as an issue to the Court of Appeals. Therefore, the issue, on the merits, is unpreserved for our review. *Id.*

Nonetheless, we agree with petitioners that certain language in the Court of Appeals' opinion could be construed as commenting on the substance of this issue. Consequently, we **vacate** that portion of the opinion which arguably suggests petitioners cannot maintain this case as a class action. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("An issue that was not preserved for review should not be addressed by the Court of Appeals, and the court's opinion should be vacated to the extent it addressed an issue that was not preserved."). If and when the class certification issue is argued, the parties can present their arguments and a ruling can be rendered based on the legal authority presented. Only then will the issue become preserved for subsequent appellate review and comment.

## CONCLUSION

For the reasons discussed above, we affirm the Court of Appeals' opinion as modified.

**AFFIRMED AS MODIFIED.**

BURNETT and PLEICONES, JJ., concur. MOORE, J., dissenting in a separate opinion in which TOAL, C.J., concurs.

---

6. This is in contrast to the situation in *Brackenbrook* where the circuit court had already certified the class. After this Court concluded that the circuit court should have dismissed the action for failure to exhaust administrative remedies, we directed Charleston County to give notice to all class members of their right to seek an administrative refund. *Brackenbrook*, however, is factually distinct from this case. Here, no judge has yet addressed the issue of class certification.

Justice MOORE, dissenting:

I respectfully dissent. I adhere to my dissenting opinion in *Brackenbrook N. Charleston, LP v. County of Charleston,* 360 S.C. 390, 602 S.E.2d 39 (2004), and would hold that the Revenue Procedures Act does not apply in an action challenging a county's millage rate. Accordingly, I would reverse the Court of Appeals' decision and remand to the circuit court for a trial on the merits.

TOAL, C.J., concurs.