622 S.E.2d 564

Maurice BESSINGER and Piggy Park
Enterprises, Inc., Appellant,

v.

BI–LO, INC, Respondent.

Maurice Bessinger and Piggy Park Enterprises, Inc., Appellant,

v.

The Kroger Co. and Mark Gray, Respondents.

Maurice Bessinger and Piggy Park Enterprises, Inc., Appellant,

v.

Publix Super Markets, Inc. and John Easterbrook, Respondents.

Maurice Bessinger and Piggy Park Enterprises, Inc., Appellant,

v.

Piggly Wiggly, Inc., Respondent.

No. 4041.

Court of Appeals of South Carolina.

Heard Sept. 13, 2005.

Decided Nov. 7, 2005.

Rehearing Denied Dec. 15, 2005.

428

George McMaster, of Columbia and Glen Winston La Force, Sr., of Hilton Head Island, for Appellant.

C. Mitchell Brown, of Columbia, John Y. Tiller and Elizabeth Applegate Dieck, both of Charleston, Kenneth E. Young, of Greenville, Kevin A. Dunlap, of Spartanburg and Steven Daniel Weber, of Charlotte, for Respondents.

GOOSLBY, J.:

Maurice Bessinger and Piggie Park Enterprises, Inc. (collectively "Plaintiffs") appeal the dismissal of their claims against various retail grocers and store managers (collectively "Defendants") filed under the South Carolina Unfair Trade Practices Act (SCUTPA). We affirm.

## FACTS/PROCEDURAL BACKGROUND

The facts in this appeal are restricted to the allegations of Plaintiffs' complaint and are assumed to be true for the purpose of our review of the appealed order.[1]

---

[1]. *See Overcash v. South Carolina Elec. & Gas. Co.*, 364 S.C. 569, 572, 614 S.E.2d 619, 620 (2005) ("A motion to dismiss a claim pursuant to

Maurice Bessinger is a native South Carolina businessman and an officer and principal shareholder in Piggie Park Enterprises, Inc. After opening his first restaurant in 1953 in Charleston, South Carolina, Bessinger expanded his business enterprise to include eleven restaurants in the Midlands Area of South Carolina as well as a large bottling and packaging plant for mass production of barbecue sauce and meat for sales in retail stores. Until September 2000, numerous supermarket chains continuously stocked and sold Plaintiffs' products for between fifteen and thirty years.

In July 2000, after the Confederate battle flag was removed from the Statehouse dome, Plaintiffs began flying a Confederate flag at each of their restaurants. In August 2000, *The State* newspaper published an article that criticized Plaintiffs for this action and for distributing religious literature at their restaurants. Subsequently, other stories appeared in both print and broadcast media about Bessinger's political and religious views, with special emphasis on the controversy surrounding the Confederate battle flag.

During the next two months, several retail grocers discontinued selling Plaintiffs' products and removed the remaining items in stock from their shelves. The only reason these various retailers gave for dropping Plaintiffs' products was Bessinger's political and religious views. There was never any allegation that Plaintiffs' products were unpopular with consumers or of less than the highest quality. The only symbol with any political significance at all on the packaging of Plaintiffs' products was a small American flag on the labels of Bessinger's barbecue sauce.

On August 16, 2001, Plaintiffs sued nine corporate entities and several individual store managers in the Lexington County Court of Common Pleas alleging Defendants' discontinuation of and refusal to display Plaintiffs' products constituted violations of the SCUTPA. After filing the original complaint as a joint action, Plaintiffs decided to proceed against the various defendants separately.

On June 21, 2002, the amended complaint was further amended to name BI–LO as a separate defendant. On July

---

Rule 12(b)(6), SCRCP, must be based solely on the allegations set forth on the face of the complaint.").

25, 2002, BI–LO moved to dismiss the case under Rule 12(b)(6), SCRCP, for failure to state a cause of action. After oral argument on the motion, Circuit Judge Kenneth G. Goode issued an order on December 27, 2002, denying the motion. His order stated: "[I]t appears to this Court that the Amended Complaint does state a valid claim for relief. Plaintiffs have alleged facts sufficient to constitute a cause of action under the SCUTPA." On June 17, 2003, Circuit Judge James Williams filed a consent order permitting Plaintiffs "to file and serve a Second Amended Complaint repleading allegations as to damages, after [BI–LO] will be able to respond and plead additional constitutional defenses to the amended complaint." Plaintiffs' amended complaint pursuant to this order was filed July 18, 2003.

The remaining corporate and individual defendants were served with amended complaints as separate actions during July and August of 2003. From August through October 2003, five of the nine corporate defendants [2] and their individual store managers removed their cases to federal court based on diversity of citizenship and moved to dismiss the actions against them under Rule 12(b)(6), FRCP. After a consolidated hearing on October 20, 2003, United States District Court Judge Joseph F. Anderson, Jr., issued an order dated November 20, 2003, upholding the removals to federal court and dismissing the actions.[3]

After Judge Anderson dismissed Plaintiffs' lawsuit in the federal court, BI–LO moved again to dismiss the state court action under Rule 12(b)(6) in the Lexington County Court of Common Pleas.[4] The remaining state court defendants joined

---

**2.** The corporate defendants removing the actions against them to the district court were Food Lion, Winn–Dixie, Sam's Club, Wal–Mart, and Harris Teeter.

**3.** *Bessinger v. Food Lion, Inc.*, 305 F.Supp.2d 574 (D.S.C.2003). The Fourth Circuit affirmed Judge Anderson's order in an unpublished opinion dated November 19, 2004. On May 16, 2005, the United States Supreme Court denied Bessinger's petition for certiorari without comment. *Bessinger v. Food Lion, LLC*, —— U.S. ——, 125 S.Ct. 2270, 161 L.Ed.2d 1080 (2005).

**4.** BI–LO's second motion to dismiss is not in the record on appeal; however, its memorandum in support of the motion was dated January 6, 2004.

in the motion.[5]  On January 6, 2004, Chief Justice Jean Hoefer Toal signed an order vesting Circuit Judge William P. Keesley with exclusive jurisdiction to hear and dispose of Plaintiffs' state court actions.

Judge Keesley heard the motions to dismiss on March 1, 2004.  On March 12, 2004, he issued an order specifically adopting the reasoning in Judge Anderson's order and ruling that (1) he was not bound by Judge Goode's earlier ruling denying BI–LO's first motion to dismiss because the complaint against BI–LO had been amended in a substantial way; and (2) under the facts as alleged in their complaints, Plaintiffs could not recover under the SCUTPA.

Plaintiffs appeal.[6]

## LAW/ANALYSIS

1.  We reject Plaintiffs' contention that Judge Keesley erred in determining he was not bound by Judge Goode's order denying a previous Rule 12(b)(6) motion by BI–LO to dismiss the case for failure to state a cause of action upon which relief could be granted.  It is clear from South Carolina case law that "[t]he denial of a Rule 12(b)(6) motion does not establish the law of the case nor does it preclude a party from raising the issue at a later point or points in the case." [7]  BI–LO, therefore, was free to file a second motion to dismiss Plaintiffs' complaint at a later time.[8]

---

5. These defendants were Publix and the manager of its Lexington County Store, Kroger and the manager of its Lexington County store, and Piggly Wiggly.

6. BI–LO moved to transfer the appeal from this court to the supreme court on the ground that the case involved a matter of significant public interest and legal principle of major importance.  The supreme court denied this motion on June 25, 2004.

7. *Huntley v. Young*, 319 S.C. 559, 560, 462 S.E.2d 860, 861 (1995).

8. Furthermore, contrary to Plaintiffs' argument, regardless of whether Judge Keesley correctly determined that the complaint against BI–LO had been amended in a substantial way, the "law of the case doctrine" did not prevent him from granting BI–LO's second motion to dismiss. *See Lifschultz Fast Freight, Inc. v. Haynsworth, Marion, McKay Guerard*, 334 S.C. 244, 245, 513 S.E.2d 96, 96–97 (1999) (noting the law of the case doctrine "applies only to subsequent proceedings in the same litigation following an appellate decision").

■ 2. We disagree with Plaintiffs' argument that they sufficiently pled the elements of an "unfair" act to state an actionable grievance under the SCUTPA.

■ The SCUTPA declares unlawful "unfair ... acts or practices in the conduct of any trade or commerce." [9] "An act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive." [10]

■ We agree with the trial court that the allegations in the complaint do not suggest Defendants committed acts that would be unfair under the SCUTPA. Assuming without deciding that Defendants terminated their business relationships with Plaintiffs solely because of Bessinger's statements, there is no First Amendment violation.[11] Moreover, as free market participants, the defendant grocery store chains and their respective managers have the right to choose with whom they conduct their business.[12] Although Plaintiffs are correct that this right "is not an absolute, unfettered privilege," recent

9. S.C.Code Ann. § 39–5–20(a) (1985).

10. *Gentry v. Yonce*, 337 S.C. 1, 12, 522 S.E.2d 137, 143 (1999).

11. *See Nat. Socialist White People's Party v. Ringers*, 473 F.2d 1010, 1015 (4th Cir.1973) ("There is no dispute that the first amendment protects from *state* interference the expression in a public place of the unpopular as well as the popular ....") (emphasis added); *Allston v. Lewis*, 480 F.Supp. 328, 334 (D.S.C.1979) (finding a trade publication of the state bar association did not serve as a public forum; therefore, its refusal to publish an advertisement did not constitute a First Amendment violation unless its practices were arbitrary, capricious, or invidious), *aff'd*, 688 F.2d 829 (4th Cir.1982).

12. *See McMaster v. Ford Motor Co.*, 122 S.C. 244, 247, 115 S.E. 244, 246–47 (1921) ("[T]he law allows one to determine for himself with whom he will contract; hence, one may refuse to contract with another or to buy or sell his goods without incurring liability for resulting damage, *even though his refusal be prompted by the intent to injure the other.*") (emphasis added); *cf. FTC v. Paramount Famous–Lasky Corp.*, 57 F.2d 152, 156 (2d Cir.1932) ("A distributor of films by lease or sale has the right to select his own customers and to sell such quantities at given prices, or to refuse to sell at all to any particular person for reasons of his own."); *Yachting Promotions, Inc. v. Broward Yachts, Inc.*, 792 So.2d 660, 664 (Fla.Dist.Ct.App.2001) ("Refusing to do business with a company because of past litigation is not an unfair or deceptive trade practice."); *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915 (1975) (sustaining a demurrer in a lawsuit against a newspaper for allegedly refusing to sell advertising space to a

case law indicates that in South Carolina the enactment of the SCUTPA has not affected this right.[13] Moreover, we agree with Judge Anderson's statement that, despite Plaintiffs' assertion that their products were never unprofitable, the business decision to discontinue the sale of these items is best left to "the one who bears the risk of the decision." [14] It follows, then, that the courts should not mandate that a private enterprise maintain an association that it believes is not conducive to any facet of its business, including its marketing, public image, and organizational structure.[15]

3. In their brief, Plaintiffs suggest that opinions from the Fourth Circuit supporting an analogous tort claim for the

---

business enterprise providing escort services to the general public, holding that the plaintiff had failed to state facts constituting an unfair trade practice).

**13.** *See Camp v. Springs Mortgage Corp.*, 310 S.C. 514, 517, 426 S.E.2d 304, 306 (1993) (affirming the dismissal under Rule 12(b)(6) of a claim under the SCUTPA involving allegations by an attorney that the defendant mortgage company had informed a customer that the plaintiff, who had closed several loans for the defendant in the past, was "not acceptable" and holding that the alleged communications by the defendant to prospective borrowers concerning the plaintiff did not constitute "an unfair act in the conduct of trade or commerce").

**14.** *See Dockside Ass'n v. Detyens*, 294 S.C. 86, 87, 362 S.E.2d 874, 874 (1987) ("[T]he business judgment rule precludes judicial review of actions taken by a corporate governing board absent a showing of a lack of good faith, fraud, self-dealing or unconscionable conduct."); *Smithy Braedon Co. v. Hadid*, 825 F.2d 787, 790 (4th Cir.1987) ("[A]t least it is safe to say that the most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear.") (quoting *Dr.Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 411, 31 S.Ct. 376, 55 L.Ed. 502 (1911) (Holmes, J., dissenting)); *Richland Wholesale Liquors v. Glenmore Distilleries Co.*, 818 F.2d 312, 317 (4th Cir.1987) (reversing a judgment in favor of a wholesaler against a distributor arising from the termination of a distributorship, holding the termination was supported by reasonable business considerations and noting "it is not fair for the courts or juries to second-guess" certain business decisions).

**15.** *Cf. America's Best Cinema Corp. v. Fort Wayne Newspapers, Inc.*, 347 F.Supp. 328, 333 (D.Ind.1972) (upholding the defendant newspapers' adoption of an advertising policy limiting the content of advertisements from movie houses and other business establishments showing unrated adult films and noting that one reason for the policy was the defendants' concern that they would lose their "family image," which, the court determined, did not reflect an anticompetitive purpose).

wrongful termination of a distributorship could potentially sustain a claim for an unfair act under the SCUTPA. To the extent this argument was preserved for appeal, we disagree. None of the pleadings before the trial court had any allegations akin to those for wrongful termination of a distributorship, and, notwithstanding authority from the Fourth Circuit to the contrary, this court has observed that no South Carolina decision recognizes a cause of action in tort for termination of a contractual relation in a manner contrary to equity and good conscience.[16]

4. Plaintiffs argue that the trial court further erred when overlooking their allegation that Defendants physically removed from the shelves in their stores those bottles of sauce that had been previously stocked. We find no reversible error. It was incumbent on Plaintiffs to raise this alleged omission to the trial court by way of a post-trial motion. The record does not indicate that Plaintiffs moved to alter or amend the appealed order; therefore, the argument has not been preserved for appeal.[17]

5. Plaintiffs argue the grant of the motion to dismiss was improper because "the case presents a set of novel circumstances that are inappropriate for resolution by Rule 12(b)(6) in an area of unsettled law." We disagree. When "the dispute is not as to the underlying facts but as to the interpretation of the law, and development of the record will not aid in the resolution of the issues, it is proper to decide even novel issues on a motion to dismiss." [18] Regardless of the assertion that this case is a matter of first impression, the heart of the controversy is the applicability of the SCUTPA to

16. *Love v. Gamble*, 316 S.C. 203, 212, 448 S.E.2d 876, 881 (Ct.App. 1994).

17. *See Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (stating that if the trial court does not explicitly rule on an argument raised and the appellant makes no Rule 59 motion to obtain a ruling, the issue is not properly before the court of appeals).

18. *Madison v. Am. Home Prods. Corp.*, 358 S.C. 449, 451, 595 S.E.2d 493, 494 (2004); *see also Brown v. Theos*, 338 S.C. 305, 313, 526 S.E.2d 232, 237 (Ct.App.1999) ("[W]hile our courts have held important questions of novel impression generally should not be decided on demurrer, this is not always true."), *aff'd*, 345 S.C. 626, 550 S.E.2d 304 (2001).

the facts alleged in Plaintiffs' complaints. As we have explained above, Plaintiffs have not alleged facts to support a cause of action under the SCUTPA; therefore, we hold further development of the record would not aid in resolution of the issues.

6. Because we have determined that the acts alleged in Plaintiffs' complaints were not "unfair" under the SCUTPA, we do not address the rulings in the appealed order addressing the question of whether the allegations in their complaint support a finding that Defendants' conduct had an adverse public impact.[19]

**AFFIRMED.**

BEATTY and SHORT, JJ., concur.

---

19. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review the remaining issues when its determination of a prior issue is dispositive of the appeal).