**CITY OF CHARLESTON, SOUTH CAROLINA, Plaintiff,**

v.

**HOTELS.COM, LP, et al., Defendants.**

**Town of Mount Pleasant, South Carolina, Plaintiff,**

v.

**Hotels.com, LP, et al., Defendants.**

**C.A. Nos. 2:06–cv–1646–PMD, 2:06–cv–2087–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 5, 2007.

Edward A. Berman, Edward A. Berman Law Office, Chicago, IL, Robert Allen Young, Town of Mount Pleasant, Mt. Pleasant, SC, Walter Ronald Bonds, Attorneys for Medical Help, Charleston, SC, for Plaintiffs.

Bradish Johnson Waring, Thomas S. Tisdale, Jr., Nexsen Pruet Jacobs Pollard and Robinson, Charleston, SC, Deborah S. Sloan, James P. Karen, Jones Day, Dallas, TX, Elizabeth B. Herrington, Paul E. Chronis, Purvi G. Patel, Mcdermott Will and Emery, Chicago, IL, Brian Scott Stagner, Jason Chad Nash, Kelly Hart And Hallman, Fort Worth, TX, Jason Chad Nash, Kelly Hart and Hallman, Fort Worth, TX, Karen L. Valihura Michael A. Barlow, Skadden Arps Slate Meagher and Flom, Wilmington, DE, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss all claims in Plaintiffs City of Charleston and Town of Mount Pleasant's ("Charleston" and "Mt. Pleas-ant" respectively; collectively, "Plaintiffs") Complaint. For the reasons set forth herein, the Defendants' Motion is denied.

## FACTUAL BACKGROUND

The facts, as alleged by Plaintiffs' Amended Complaints, are as follows:

Pursuant to their respective Municipal Accommodations Fee Ordinances, Charleston imposes a tax of 2% and Mt. Pleasant imposes a tax of 1% (the "tax") on the gross proceeds derived from the rental of any accommodations within their municipal boundaries. All persons renting hotel rooms within Charleston or Mt. Pleasant are required to pay the tax in addition to the gross price of the hotel room. The tax is paid by the consumer at the time of the "delivery of the accommodations to which the fee applies" and is collected on behalf of the relevant municipality by the provider of the service of the rental of accommodations. Charleston, S.C. Ordinance 1996–18, § 4; Mt. Pleasant, S.C. Ordinance 96014, § 4. Plaintiffs adopted these taxes in 1996 to help provide property tax relief to their residents.

Defendants are online sellers and/or online resellers of hotel rooms to the general public. Defendants have rented rooms in Charleston and in Mt. Pleasant to consumers and have collected accommodations taxes. Plaintiffs assert, however, that Defendants have not paid the full amount of tax due and owing to Plaintiffs on these transactions. Specifically, Defendants contract with hotels operating within Charleston and Mt. Pleasant for rooms at negotiated discounted room rates. Defendants then market these rooms on their websites, and sell the rooms at a higher marked-up price to consumers who occupy the rooms. Defendants charge and collect the accommodations taxes from online consumers at the time of the sale based on the

marked-up room rates, but only remit the taxes based on the lower discount rates to the Plaintiffs. Defendants keep the difference between the amount of tax charged to the consumer and the amount remitted to the Plaintiffs.[1] Plaintiffs assert that this practice violates Plaintiffs' Municipal Accommodations Fee Ordinances and constitutes conversion, calls for an imposition of a constructive trust, and is an unfair or deceptive trade practice in violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). Plaintiffs also demand a legal accounting of all money Defendants are alleged to have charged consumers as "tax" and retained as profit.

## PROCEDURAL BACKGROUND

On April 26, 2006, Charleston filed a Complaint against Defendants in the Charleston County Court of Common Pleas. Mt. Pleasant filed a nearly identical Complaint against Defendants on May 23, also in the Charleston County Court of Common Pleas. These Complaints originally asserted causes of action for (1) violations of the Municipal Accommodations Fee Ordinances, (2) conversion, and sought (3) imposition of constructive trust and (4) a full legal accounting. Defendants removed both cases to federal district court pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction.

On January 11, 2007, based upon the parties' agreement and consent, the court entered Amended Scheduling Orders in both cases. Under these Orders, the parties had until January 23 to amend their pleadings. Accordingly, on January 22, Plaintiffs filed Motions to Amend their Complaints, seeking to add a fifth cause of

action to their Complaints based on Defendants' alleged violation of SCUTPA, S.C.Code Ann. § 39–5–10, *et seq.* (2006). This motion was granted by the court on April 23.

On April 25, 2007, Defendants filed an Unopposed Motion to Consolidate the two cases into a single action, which the court granted on April 26. On June 4, Defendants filed the Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum in Support Thereof. Plaintiffs filed a Memorandum of Law in Opposition to Defendants' motion on July 19. On August 8, Defendants filed a Reply with Supporting Memorandum in Support of Their Motion to Dismiss.

Defendants move for dismissal of the Complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. Rule 12(b)(6).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action

---

1. For example, if a Charleston hotel agreed to provide a room to one of the Defendants for $50, and Defendant sold it online to a consumer for $100, Defendant would charge the 2% tax on the $100, and consumer would pay $2 in taxes to Defendant. But Defendant would only remit the 2% tax on the $50 discount rate, $1, to the hotel in question to pay to Charleston, and keep the remaining $1 as profit on the transaction.

are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972). If, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Fed. R.Civ.P. 12(b).

## ANALYSIS

As an initial matter, the court notes that the legal questions presented in this litigation are extremely unsettled. This case is but one of a great number of similar cases being brought by counties and municipalities across the nation. Most district courts hearing these cases have denied, at least in part, the online travel companies' motions to dismiss.[2] However, several courts have granted these motions and dismissed the case.[3] While some of this variance in the application of the law is no doubt due to the considerable variance in municipal accommodations fee ordinances, state enabling statutes, and state unfair trade practices laws, much of it is due to a

lack of established precedent in these areas.

## I. Plaintiffs' Count I: Defendants' Actions Violated Municipal Accommodations Fee Ordinances

Plaintiffs allege that Defendants are subject to City of Charleston Municipal Accommodations Fee Ordinances 1996–18 and 1996–56 and Mt. Pleasant Municipal Accommodations Fee Ordinances 96014 and 96023, respectively. The Ordinances are virtually identical, and use identical language in all sections relevant to this action. The Ordinances were passed for the purpose of passing the cost of much of the capital expenditures necessary to support regional tourism along to the visitors themselves, and relieve local property owners of some of the financial burden for such costs.[4]

The Ordinances provide for the imposition of an accommodations fee on "the gross proceeds derived from the rental of any accommodation."[5] The tax is imposed

---

**2.** *See, e.g., City of North Myrtle Beach v. Hotels.com*, No.: 4:06–CV–3063–RBH (D.S.C. Sept. 30, 2007); *City of San Antonio v. Hotels.com*, 2007 WL 1541184 (W.D.Tex. Mar.20, 2007); *City of Gallup v. Hotels.com, L.P.*, No. 06–0549–JC (D.N.M. Jan. 30, 2007); *Leon County v. Hotels.com, L.P.*, No. 06–21878–CIV, 2006 WL 3519102 (S.D.Fla. Dec. 6, 2006); *City of Findlay v. Hotels.Com, L.P.*, 441 F.Supp.2d 855 (N.D.Ohio 2006); *City of Fairview Heights v. Orbitz, Inc., et al.*, No. 05–CV–840–DRH (S.D.Ill. July 12, 2006); *City of Rome v. Hotels.com, LP*, No. 4:05–CV–249–HLM (N.D.Ga. May 8, 2006).

**3.** *See, e.g., City of Orange v. Hotels.com, LP*, 2007 WL 2787985 (E.D.Tex. Sept.21, 2007); *County of Nassau, New York v. Hotels.com, LP, et al.*, No. 06–CV–5724 (E.D.N.Y. Aug. 17, 2007); *Pitt County v. Hotels.com, L.P.*, No. 4:06–CV–30–BO (E.D.N.C. Aug. 13, 2007).

**4.** "The cost of providing the special services and facilities required by the tourism industry

should be apportioned more equitably between the [City/Town]'s taxpayers and those who visit the [City/Town] and enjoy the special benefits [Charleston/the Town] provides them. It is necessary for the promotion of the common interests of the residents of the [City/Town] as well as those who are visitors to the [City/Town] to provide a method for paying certain [operational and capital costs/costs] by a means other than the levy of ad valorem property taxes." Charleston, S.C. Ordinance 1996–18, § 1; Mt. Pleasant, S.C. Ordinance 96014, § 1.

**5.** The Ordinances also provided a definition for accommodation: "Accommodation is defined as any room (excluding meeting and conference rooms), campground spaces, recreational vehicle spaces, lodging or sleeping accommodations furnished to transients by any hotel, motel, inn, condominium, 'bed and breakfast,' residence, or any other place in which rooms, lodgings, or sleeping accommodations are furnished for consideration."

upon the consumer of the accommodations, who is responsible for paying the tax "at the time of delivery of the accommodations to which the fee applies." Charleston, S.C. Ordinance 1996–18, § 4; Mt. Pleasant, S.C. Ordinance 96014, § 4. The Ordinances also specify that the tax "shall be collected by the provider of the accommodations." *Id.* The provider of the accommodation is then responsible for remitting the amount of the tax to the municipality on a monthly basis.

The Ordinances also provide a mechanism for enforcing the tax:

> For the purpose of enforcing the provisions of this Ordinance the Director of Business License or other authorized agent of the [City/Town] is empowered to enter upon the premises of any person or entity subject to this Ordinance and to make inspections, and examine and audit books and records. It shall be unlawful for any person or entity to fail or refuse to make available the necessary books and records during normal business hours upon 24 hours written notice. In the event an audit reveals that false information has been filed by the remitter, the cost of the audit shall be added to the correct amount of fees determined to be due. [...] The Director of Business License may make systematic inspections of all accommodations within the City to ensure compliance with this Ordinance.

Charleston, S.C. Ordinance 1996–18, § 8; Mt. Pleasant, S.C. Ordinance 96014, § 7.

These Ordinances were enacted by Plaintiffs pursuant to a South Carolina enabling act. This act gives each South Carolina municipality the power to enact local Ordinances "including the authority to levy and collect taxes ... provided, however, that this shall not extend the

Charleston, S.C. Ordinance 1996–18, § 2; Mt.

effect of the laws of the municipality beyond its corporate boundaries." S.C.Code Ann. § 5–7–30 (2006).

Count I of Plaintiffs' Amended Complaint was that Defendants were responsible for paying the tax on the amount the consumer actually paid for the accommodation, not just the discount price at which the accommodation had been offered to the website by the hotel. In their Motion to Dismiss, Defendants assert that, even assuming the factual assertions in the Complaint as true, Plaintiffs have not stated a claim upon which relief can be granted. Defendants submit that the Ordinances in question do not subject them to civil liability, for several reasons.

*A. Defendants' Claim That State Law Prohibits Plaintiffs From Applying the Ordinances to Businesses Operating Outside of Their Respective Municipalities*

*1. The State Enabling Act*

■ In their Motion to Dismiss, Defendants claim that the enabling act "expressly prohibits" the levying of taxes against out-of-state corporations by municipalities. (Defs.' Mem. at 15–16.) Their support for this proposition comes from the language of the act, which gives municipalities the power to impose taxes "provided, however, that this shall not extend the effect of the laws of the municipality beyond its corporate boundaries." S.C.Code Ann. § 5–7–30 (2006).

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Chem–Nuclear Systems, LLC v. South Carolina Bd. Of Health and Envtl. Control,* 374 S.C. 201, 205, 648 S.E.2d 601, 603 (S.C.2007). "The language of a statute must be read in a sense which harmonizes with its subject

Pleasant, S.C. Ordinance 96014, § 2.

matter and accords with its general purpose." *Id.*

The court disagrees with Defendants' assertion that the plain language of the enabling statute is somehow "fatal" to Plaintiffs' claim. (Defs.' Mem. at 16.) The enabling statute was designed to give municipalities autonomy to impose taxes on their own residents and businesses.[6] The most reasonable interpretation of the caveat "provided, however, that this shall not extend the effect of the laws of the municipality beyond its corporate boundaries" is that legislators needed to insert a provision to prevent municipalities from attempting to levy taxes against residents or businesses of other municipalities whose activities had no impact on the taxing municipality. If, as Defendants propose, South Carolina legislators had intended to exempt from municipal taxation any person or business not located in that municipality, they could have easily done so with explicit language to that effect. Instead, they chose to use the language limiting "the *effect* of the laws" to municipal boundaries.

The court does not accept Defendants' assertion that the effect of the municipal accommodations fee ordinances in question extends beyond Charleston and Mt. Pleasant, respectively. These Ordinances, as written and as applied, only apply to accommodations within the municipal boundaries of Charleston and Mt. Pleasant. The effect is limited to the payment of a percentage of the total price paid in exchange for the right to stay in a hotel room or other accommodation *located within Charleston or Mt. Pleasant.*

The fact that the Defendants, who are allegedly in the business of providing these accommodations, happen to be located outside the limits of these municipalities does not change the practical "effect" of these statutes. To hold otherwise would create a number of absurd loopholes which would take away municipalities' right to tax their own citizens and businesses. For example, if the court accepted Defendants' interpretation of the statute, there would seem to be nothing to prevent a hotel or hotel chain from establishing a wholly-owned subsidiary corporation in a different municipality to handle all of its reservation and booking inquiries. The individual hotel or hotels could then provide rooms to the subsidiary at an extremely cheap price, and the subsidiary could sell them to consumers at a much higher rate. In this way, the company would be able to provide accommodations to customers without having to charge the customers the accommodations tax on the amount the customers actually pay for the room. Or, as Defendants are alleged to have done here, this hypothetical hotel chain could charge the customers the accommodations tax and keep a substantial portion of it as profit. The court simply cannot accept that the legislature intended the statute to impose such a restriction, which would lead to such absurd results, on municipal powers of taxation.

### 2. State Statute Defining "Local Accommodations Tax"

■ Defendants also assert that the state statute defining "local accommodations tax" prohibits the Plaintiffs' proposed application of the Ordinances. (Defs.'

---

**6.** The legislature intended this statute to be generally read to confer strong municipal power, as evidenced by a section defining the "scope" of Chapter 7, in which the enabling act in question is located. There, the law provides that "[t]he power of a municipality shall be liberally construed in favor of the municipality ..." S.C.Code Ann. § 5–7–10 (2006).

Mem. at 17.) The statute in question provides that:

> "Local accommodations tax" means a tax on the gross proceeds derived from the rental or charges for accommodations furnished to transients ... and *which is imposed on every person engaged or continuing within the jurisdiction of the imposing local governmental body in the business of furnishing accommodations to transients for consideration.*

S.C.Code Ann. § 6–1–510(1) (2006) (emphasis added). Defendants argue that the highlighted language specifically restricts the applicability of accommodations taxes like the Ordinances in question to persons or businesses located within the municipal boundaries. (Defs.' Mem. at 17.)

The statute in question does not suffer from an abundance of clarity. Upon first reading of the section, it is not immediately clear whether the phrase "within the jurisdiction of the imposing local governmental body" applies to "person" or "accommodations."[7] As the statute is written, either interpretation is plausible. In the present case, this is far from some small bit of grammatical minutiae—this entire cause of action may be dependent on whether this definitional statute allows municipalities to apply accommodations fee taxes to persons and businesses located outside municipal boundaries.

As discussed in the previous subsection, the guiding principle of the court when called upon to determine a statutory ambiguity to is to discern and honor legislative intent. For the same reasons outlined above regarding the enabling statute, the court finds that the most reasonable interpretation of the legislators' intent in passing the definitional statute is that accommodations taxes can be levied against those engaged in the practice of providing hotel rooms within the municipal boundaries, regardless of the providers' physical location.

Accordingly, the court finds that Plaintiffs are not prohibited by state law from applying their Municipal Accommodations Fee Ordinances against out-of-state persons and businesses, and thus Defendants are not entitled to dismissal on these grounds.

### B. Defendants' Claim That Municipal Ordinances Do Not Apply to Them Because They Are Not Providers or Sellers of Accommodations

■ Defendants also assert that they are merely an intermediary between hotels and customers, and thus not subject to accommodations taxes because they are not "in the business of furnishing accommodations." S.C.Code Ann. § 6–1–510(1) (2006).

The state statute defining "local accommodations tax" states that it is a tax that applies to persons "in the business of furnishing accommodations to transients for consideration." *Id.* The Ordinances themselves specify that they apply to situations where "sleeping accommodations are furnished for consideration." Charleston, S.C. Ordinance 1996–18, § 2; Mt. Pleasant, S.C. Ordinance 96014, § 2. Defendants argue that they are merely an intermediary between travelers and hotels, similar

---

7. For example, the statute would be more easily understood if its words were rearranged to read either: (1) "... which is imposed on every person within the jurisdiction of the imposing local governmental body who is engaged or continuing in the business of furnishing accommodations to transients for consideration." or (2) "... which is imposed on every person engaged or continuing in the business of furnishing accommodations to transients for consideration within the jurisdiction of the imposing local governmental body."

to a travel agent, and are not themselves in the business of "furnishing" accommodations. (Defs.' Mem at 20.) ("Defendants do not—and are not alleged to—perform any of the duties associated with furnishing hotel rooms, such as physically maintaining hotel rooms or other on-site facilities.") For this reason, Defendants assert that the Ordinances cannot be applied to them.

Defendants point out that Merriam–Webster's Collegiate Dictionary defines "furnish" as to "equip," "outfit," or "supply." *Id.* at 21. Plaintiffs have not alleged that Defendants equipped, outfitted, or supplied hotel rooms. However, dictionaries also define "furnish" as "to supply what is needed for an activity or purpose." *Webster's II New College Dictionary* 454 (2d ed.1999). The court finds this latter definition a much more plausible interpretation of what state and city legislators meant by using the word "furnish." The core purpose of the Ordinances is to levy a tax on the amount of money visitors to the municipality spend on their hotel rooms or other accommodations. What is relevant, then, is not who is actually performing the upkeep of the room, but rather who is accepting money in exchange for "supplying" the room.

According to the facts as alleged by Plaintiffs, there can be no doubt that Defendants supplied accommodations to consumers, and are thus subject to the Ordinances. According to Plaintiffs:

> Defendants are the ones directly dealing with the consumer on the internet. Defendants are consummating the sale, calculating the tax, and collecting the retail rate for the room and the tax. Most significantly, Defendants are the only entity on the selling part of the transaction who know the amount of the gross price paid by the consumer.

(Pls.' Mem. in Opp'n at 26–27.) If consumers access a website, use it to book a hotel room, pay the website directly, and never pay the hotel, or interact with the hotel at all until they arrive, the court cannot accept Defendants' assertion that they do not furnish accommodations to consumers.

Accordingly, the court finds that Plaintiffs have alleged an issue of material fact concerning whether Defendants are in the business of "furnishing" accommodations, and thus dismissal on this ground is denied.

### C. Defendants' Claim that Plaintiffs Were Required To Exhaust Administrative Procedures Provided in the Municipal Ordinances

Defendants assert that they are not subject to the Ordinances because the Ordinances explicitly set forth procedures for collecting these taxes, which Plaintiffs did not follow. The South Carolina Revenue Procedures Act ("RPA"), which Defendants claim the Ordinances are subject to, also sets forth administrative procedures for resolving disputes over tax assessments. Defendants claim that Plaintiffs were required to first attempt to resolve this matter through following these procedures before bringing a lawsuit against Defendants in federal court.

#### 1. The South Carolina Revenue Procedures Act

Defendants claim that the RPA sets forth the exclusive administrative remedy for "any case involving the illegal or wrongful collection of taxes, or attempt to collect taxes." (Defs.' Mem. at 10.) The RPA provides that any agency trying to collect a tax must issue an assessment, giving the taxpayer 90 days to respond. S.C.Code Ann. §§ 12–60–420 to 12–60–440 (2006). If the taxpayer disagrees with the assessment, he or she may file an appeal

to the Administrative Law Judge Division. *Id.* § 12–60–460 (2006).

However, the RPA generally only applies to "any dispute with the Department of Revenue." *Id.* § 12–60–20 (2006). There is, however, an enumerated exception to this—several provisions of the RPA specifically apply the RPA to property taxes, which are levied by local authorities, not the Department of Revenue. *Id.* §§ 12–60–1710 to 12–60–2940.

The case Defendants cite for the proposition that the RPA, specifically the RPA's exhaustion requirement, applies to taxes levied by county and local authorities, involved a dispute over an assessment of real property taxes. *B & A Development, Inc. v. Georgetown County,* 372 S.C. 261, 641 S.E.2d 888 (S.C.2007). In the case, the South Carolina Supreme Court specifically applied the RPA's exhaustion requirement in a case between a taxpayer and a county taxing authority. However, the court finds that this case is distinguishable, because it involved the taxation of property, which is specifically provided for under numerous sections of the Act. *See id.* at 266–67, 641 S.E.2d at 891–92 (discussing specific RPA provisions dealing with the taxation of real and personal property). Defendants cannot provide, and the court is not aware of, any instance in which the RPA's exhaustion requirement has been applied to local accommoda-

tions taxes or a similar percentage-based consumer tax.[8] The court finds that the RPA does not apply to municipal accommodations taxes, and thus Plaintiffs were not required to exhaust the administrative remedies provided for in the RPA before bringing this action.[9]

### 2. The Municipal Accommodations Fee Ordinances

The Ordinances provide that the Director of Business License may enter the premises of anyone subject to the Ordinances and inspect their books and records. If the Director finds that a filing contained false information, he or she is empowered to add the cost of the audit to the amount of fees due, which the provider must then pay to the municipality. Charleston, S.C. Ordinance 1996–18, § 8; Mt. Pleasant, S.C. Ordinance 96014, § 7. Defendants claim that this is the exclusive remedy for enforcing the Ordinances, and that Plaintiffs are required to inspect and audit before bringing a lawsuit. (Defs.' Mem. at 9.) ("The inclusion of the audit, inspection and administration sections of the Ordinances is rendered without meaning if Plaintiffs can file lawsuits to collect tax before they even determine how much tax, if any, is due from the taxpayer."). Plaintiffs have not claimed to have made

---

**8.** Defendants do cite the case *Anonymous Taxpayers v. South Carolina Department of Revenue,* 2001 WL 718005 (S.C. Admin. Law Judge Div., June 5, 2001). However, contrary to Defendants' claim that this case applied the RPA to Beaufort County's local option tax, the tax in question was actually administered by the Department of Revenue on behalf of the county. Therefore, any dispute a taxpayer would have had regarding the assessment of such a tax would have been with the Department of Revenue, not the local taxing authority. For this reason, this case is not relevant on the issue of whether the RPA

applies to the municipal accommodations tax ordinances of Charleston and Mt. Pleasant.

**9.** This interpretation is further strengthened by a very recent amendment to the RPA, which seems to be an attempt by legislators to clarify this very issue. *See* 2007 South Carolina Laws Act 116 (H.B.3749) & 2007 South Carolina Laws Act 110 (S.B.91) (amending S.C.Code Ann. § 12–60–20 to read that the RPA's purpose is to establish "a straightforward procedure to determine a dispute with the Department of Revenue and a dispute concerning property taxes.")

any effort to audit or inspect the records of any of the Defendants.

Plaintiffs have asserted that the court should not apply the exhaustion requirement in this case because the administrative procedures of the Ordinances would be futile. "The question of whether to require the plaintiff to exhaust administrative remedies is a matter within the sound discretion of the trial judge." *Law v. South Carolina Dep't of Corrections,* 368 S.C. 424, 438, 629 S.E.2d 642, 650 (2006). "A general exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that a pursuit of them would be a vain or futile act." *Moore v. Sumter County Council,* 300 S.C. 270, 273–74, 387 S.E.2d 455, 458 (1990).

Here, requiring the Plaintiffs to follow the administrative procedure would be an exercise in futility, and would in no way facilitate the ultimate resolution of the dispute between the parties. Given that Defendants are vigorously litigating the issue of whether they should be subject to municipal accommodations taxes, not only in this jurisdiction but in other jurisdictions across the nation, the court does not believe that Defendants would have allowed the Director to inspect and audit their records in order to make an assessment of the extent of tax liability. Even if they had, the court certainly does not believe that Defendants would have paid the assessed tax, and the issue would have inevitably ended up in federal court to determine whether the Ordinances apply to Defendants or not. The twin goals of the exhaustion requirement are administrative agency autonomy and judicial efficiency. Requiring Plaintiffs to go through the charade of sending the Director of Business License to look through Defendants' records only to be denied access or payment would serve neither goal.

### 3. Due Process

Defendants also argue that by not following the administrative procedures of the RPA and the Ordinances, Plaintiffs have deprived Defendants of their constitutional Due Process rights. (Defs.' Mem. at 13.) ("Plaintiffs are now attempting to deprive the OTC Defendants of their property without allowing access to the administrative procedures provided to taxpayers by South Carolina law.") Defendants assert that they should have received notice of the proposed tax liability, and an opportunity to be heard.

This claim severely misunderstands the nature of due process protection. Defendants are indeed entitled to notice and an opportunity to be heard, but the ordinary course of civil litigation under the Federal Rules of Civil Procedure provides ample protection of these rights. Defendants received notice when they were validly served with the Complaints and subsequent pleadings. Defendants are receiving an opportunity to be heard by being able to litigate the case in an impartial court of law. Nowhere in the pleadings have Defendants alleged that they have actually suffered any sort of deprivation of property. The fact that Defendants may be liable at the conclusion of litigation if a judgment is entered against them certainly does not constitute a violation of the Due Process Clause. Indeed, if the court were to accept Defendants' interpretation of due process rights, it would seem that every civil lawsuit for monetary damages would suddenly be transformed into a constitutional violation.

Accordingly, the court finds that Plaintiffs' filing of this lawsuit without the matter having been first adjudicated administratively in some fashion was not a

violation of Defendants' due process rights.

### 4. Separation of Powers

■ Defendants further assert that the court cannot impose tax liability on the Defendants because the imposition of tax liability is exclusively vested in the executive, not the judicial, branch. (Defs.' Mem. at 14–15.) Defendants claim that only the Directors of Business License are empowered to assess and collect the taxes in question, and it would be unconstitutional for the court to intrude upon the executive branch's power by issuing a judgment in this case.

Assessing and collecting the taxes and determining who is subject to the tax are two very different things. It is a well-established principle of tax law that courts can determine whether or not a party is subject to a tax. *See, e.g., F.W. Woolworth Co. v. Taxation and Revenue Dept. Of State of New Mexico*, 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982). The procedure outlined in the Ordinances empowers the Director of Business License to inspect, audit, and assess records to see if the correct amount of tax has been remitted. However, the central issue at this stage of this litigation is whether Defendants are subject to the Ordinances at all. Such a determination is fundamentally legal, not administrative, in nature, and the Ordinances do not give the Director of Business License the authority to determine the scope of the law. Furthermore, the court finds it difficult to believe that what Defendants actually desire is for the Director of Business License, a municipal employee working under a municipal executive who has a vested interest in maximizing tax revenue, to have the ultimate authority to determine whether parties located outside municipal boundaries are in

fact subject to municipal taxes. While the Director does have exclusive control over the administrative tasks of assessing and collecting a given tax, it is the province of the courts, as the branch of government most disinterested in the outcome, to determine whether a party is subject to a tax or not.

Accordingly, the court finds that Defendants have not conclusively shown that Plaintiffs failed to exhaust the required administrative remedies, and thus dismissal on these grounds is denied.

## II. Plaintiffs' Count II: Defendants' Actions Constituted Conversion

Plaintiffs also allege that Defendants' actions constituted an act of conversion.

■ "Conversion is a tortious act, and may arise either by wrongful taking of chattel or by some other illegal assumption of ownership, by illegally using or misusing it, or by wrongful detention." *Castell v. Stephenson Finance Co.*, 244 S.C. 45, 135 S.E.2d 311, 313 (1964) (citation omitted). Money may be the subject of conversion when there is an obligation on the defendant to deliver a specific and identifiable fund to the plaintiff. *Richardson's Rests., Inc. v. Nat'l Bank of S.C.*, 304 S.C. 289, 294, 403 S.E.2d 669, 672 (1991). However, the amount must be "capable of being identified and there may be conversion of determinate sums even though the specific coins and bills are not identified." *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 498, 392 S.E.2d 789, 792 (1990).

■ Defendants conclusively assert that because they are not subject to the accommodation ordinances, Plaintiffs cannot establish title to or the right to the possession of the claimed taxes. (Defs.' Mem. at 22–23.) However, as discussed above, Plaintiffs have sufficiently alleged that Defendants are, in fact, subject to the

ordinances in question. Accordingly, if Defendants have an obligation to deliver Plaintiffs the taxes, then Plaintiffs have a right to possession, and accordingly an action for conversion.

Furthermore, even if Defendants were not subject to the Ordinances, Plaintiffs have stated a claim for conversion that is sufficiently strong to survive Defendants' Motion to Dismiss. For this was not a case where Defendants have merely asserted that they are not subject to the Ordinances and do not have to charge the applicable accommodations tax on the amount they charge the customer. Plaintiffs have alleged that Defendants have been charging the tax on the higher amount, but have simply refused to remit this to the municipalities. So even if the court were to find that Defendants were not subject to the Municipal Accommodations Fee Ordinances, Defendants have still charged customers an amount that was labeled as "tax," which they then kept as profit. This allegation alone is sufficient to support an action for conversion.

Defendants additionally suggest that an action for conversion must fail because Plaintiffs did not demand the taxes associated with the accommodation ordinances. Demand and refusal are unnecessary where the conversion of money is secured "illegally, tortiously, by fraud, or *other wrongful conduct.*" *SSI Medical Services,* 301 S.C. at 499, 392 S.E.2d at 793 (citations omitted) (emphasis added). Plaintiffs' allegations addressing how Defendants secured the disputed funds adequately demonstrate that demand was unnecessary and thus not a bar for an action for conversion.

Accordingly, the Defendants' Motion to Dismiss as to Plaintiffs' conversion claim is denied.

### III. Plaintiffs' Count III: Imposition of Constructive Trust

Plaintiffs also claim that the court should impose a constructive trust on the money Defendants allegedly charged consumers as "tax," but did not remit to the Plaintiffs.

A constructive trust arises entirely by operation of law without reference to any actual or supposed intentions of creating a trust. *SSI Medical Servs.,* 301 S.C. at 500, 392 S.E.2d at 793 (1990). An action to declare a constructive trust is one in equity and a court may find facts in accordance with its own view of the evidence. *Lollis v. Lollis,* 291 S.C. 525, 530, 354 S.E.2d 559, 561 (1987). "A constructive trust arises whenever a party has obtained money which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it as where money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust or the violation of a fiduciary duty." *SSI Medical Servs.,* 301 S.C. at 500, 392 S.E.2d at 793–94.

Plaintiffs' Amended Complaint sufficiently alleges that Defendants obtained money which does not equitably belong to them. Defendants argue that because Plaintiffs do not assert fraud or a fiduciary duty, an action to declare a constructive trust must fail. (Defs.' Mem. at 23.) However, actual fraud is not required for the imposition of a constructive trust— it can result from "fraud, bad faith, abuse of confidence, or violation of a fiduciary duty." *Lollis,* 291 S.C. at 529, 354 S.E.2d at 561. Plaintiffs' claim that Defendants charged customers under the guise of a tax, which consumers would have reasonably assumed would be remitted to local governments, while only transmitting the tax on the discounted price amounts to the municipalities, are sufficient allegations of

fraudulent or bad faith retentions of money that did not belong to Defendants to support a claim for the imposition of a constructive trust.

Accordingly, the Defendants' Motion to Dismiss as to Plaintiffs' claim for the imposition of a constructive trust is denied.

## IV. Plaintiffs' Count IV: Demand for Legal Accounting

Plaintiffs also request that the court require Defendant to provide them with an accounting of all amounts charged to consumers renting accommodations in Charleston and Mt. Pleasant as a "tax" that was not then remitted to those municipalities.

The South Carolina Supreme Court has held that:

> An accounting is essentially an equitable remedy. As an equitable remedy, an accounting is designed to prevent unjust enrichment by disclosing and requiring the relinquishment of profits received as the result of a breach of a confidential or fiduciary duty. Equitable jurisdiction for an accounting may also be invoked (1) in actions involving long and complicated accounts where it would not be practicable for a jury to comprehend the issues and correctly make adjustment, and (2) when there is a need for a discovery.

*Rogers v. Salisbury Brick Corp.*, 299 S.C. 141, 144, 382 S.E.2d 915, 917 (S.C.1989) (citations omitted).

 Defendants assert that Plaintiffs' request for an equitable accounting should be dismissed because Defendants are not subject to the Municipal Accommodations Fee Ordinances. (Defs.' Mem. at 23.) However, since Plaintiffs have made sufficient allegations to support a cause of action against the Defendants under the Ordinances, this cause of action will not be dismissed for that reason. Furthermore, as discussed above, even if Defendants are not subject to the Ordinances, Plaintiffs have stated causes of action for conversion and for the imposition of a constructive trust, in which case an accounting would also be justified. Plaintiffs have alleged that Defendants were unjustly enriched by their practice of keeping money charged to consumers as a "tax." If this is found to be true, then the most efficient way of determining the actual harm done to Plaintiffs would be to order Defendants to provide Plaintiffs with an accounting.

Accordingly, Defendants' Motion to Dismiss as to Plaintiffs' claim for an equitable accounting is denied.

## V. Plaintiffs' Count V: Defendants Actions Violate the South Carolina Unfair Trade Practices Act

 Plaintiffs' fifth and final cause of action against Defendants is that by failing to remit tax on the entire amount charged to the consumer, they are committing unfair and deceptive commercial activity, which gives rise to a cause of action under SCUTPA. A cause of action pursuant to SCUTPA requires Plaintiffs to demonstrate the following: "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir.1998) (citing S.C.Code Ann. § 39–5–140 (2006); *Daisy Outdoor Adver. Co. v. Abbott*, 322 S.C. 489, 473 S.E.2d 47 (1996)). According to the SCUTPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

S.C.Code Ann. § 39–5–20 (2006). "An act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive." *Bessinger v. Bi–Lo, Inc.*, 366 S.C. 426, 432, 622 S.E.2d 564, 567 (Ct.App. 2005). The terms "trade" and "commerce" "shall include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed ..." S.C.Code Ann. § 39–5–10 (2006). "Unfair or deceptive acts or practices have an impact upon the public interest if the acts or practices have the potential for repetition." *York v. Conway Ford, Inc.*, 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997). Defendants have moved to dismiss this claim.

### A. Law of the Case Doctrine

■ Plaintiffs' primary argument in opposition to Defendants' motion to dismiss the SCUTPA claim is that the court is not permitted to dismiss this claim under the "law of the case doctrine." (Pls.' Mem. in Opp'n at 31–32.) The law of the case doctrine holds that once a court has decided an issue, that same court should not revisit that issue and reverse its earlier decision. But this doctrine is intended as a guidepost, not a binding legal rule:

> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Law of the case directs a court's discretion. It does not limit the tribunal's power.

*Arizona v. California*, 460 U.S. 605, 618–619, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (citations omitted). *See also In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 261 (4th Cir.2002) ("The law of the case doctrine is not so rigid that it requires a judge

to follow a prior ruling, which is not a final order and has not been the subject of an appeal, as if the issue is *res judicata*.") (quoting *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 894 (6th Cir. 1996)).

■ The law of the case doctrine is intended to serve the interests of stability, finality, and judicial efficiency. *United States v. Williams*, 162 Fed.Appx. 254, 258–59 (4th Cir.2006). It is, however, entirely within the discretion of the trial court to revisit its own decisions where it believes them to be erroneous or if the decision has been materially changed by new facts or allegations. *Major v. Benton*, 647 F.2d 110, 112 (10th Cir.1981) ("When a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal.")

When Plaintiffs sought leave to amend the original complaint to add the SCUTPA claim on January, Defendants responded in opposition to the amendment. Defendants' Response in part argued that Plaintiffs should not be allowed to amend the complaint because a SCUTPA claim would fail as a matter of law, and thus amendment would be futile. (Defs.' Mem. in Opp'n to Pl.'s Mot. to Amend at 6–11.) In granting Plaintiffs' Motion to Amend, the court addressed the same issues raised by Defendants in their Motion to Dismiss. (Order at 4–7.) Based on this, Plaintiffs assert that these issues have been decided by the court, and may not be revisited. (Pls.' Mem. in Opp'n at 31–32.)

Specifically, the court held that Plaintiffs had satisfied the broad pleading requirements of Fed.R.Civ.P. 15(a) on the issues of whether: (1) the Plaintiffs had standing to bring a claim under SCUTPA; (2) the complaint alleged unfair or deceptive practices; and (3) the allegations implicated

SCUTPA's regulatory exception. (Order at 5–7.) On the regulatory exception claim, and on Defendants' claims that a SCUTPA claim would be futile because Plaintiffs failed to seek redress for misrepresentations to consumers and Plaintiffs' SCUTPA claim would be irreconcilable with the local tax schemes at issue, the court explicitly noted that the issues may possibly be reconsidered in a motion to dismiss if information was presented which merited such consideration.

■ The standards of review for determining whether a motion to amend should be denied for futility under Fed.R.Civ.P. 15(a) and determining whether a motion to dismiss should be granted under Fed. R.Civ.P. 12(b)(6) are identical. *Adorno v. Crowley Towing and Transp. Co.,* 443 F.3d 122, 126 (1st Cir.2006) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed.R.Civ.P. 12(b)(6)."); *Nettis v. Levitt,* 241 F.3d 186, 194 n. 4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."); *Stripling v. Jordan Production Co., LLC,* 234 F.3d 863, 873 (5th Cir.2000) (same); *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000) (same).

■ The court emphasizes that it does not invoke the law of the case doctrine as a hollow technicality. Rather, the court decided these same issues mere months ago under an identical standard of review. Since that time, Defendants have not raised, and the court is not aware of, any new material facts which would change the analysis of whether Plaintiffs' allegations meet the liberal pleading requirements of Rule 12(b)(6). On the contrary, the SCUTPA section of the Defendants' Motion to Dismiss is virtually identical, with all but a few sentences having been directly copied from the Memorandum in Opposition to the Plaintiffs' Motion to Amend. Since the court has been given no reason to revisit the decision to allow amendment to include the SCUTPA, it sees no need to do so. The court's substantive analysis is unchanged.

### B. Substantive Analysis

### 1. Defendants' Claim that Complaints Do Not Allege Unfair or Deceptive Trade Practices

■ Defendants assert that their alleged failure to pay local taxes is neither "unfair" nor "deceptive." (Defs.' Mem. at 24.) As such, Defendants argue that Plaintiffs have not alleged facts supporting the first element of a SCUTPA cause of action. The court notes, however, that the Amended Complaints do not *only* allege that Defendants failed to pay the relevant local tax; rather, they allege that Defendants collected the tax from consumers and then wrongfully kept a portion of the tax collected. In other words, the alleged deceptive and unfair business practice is Defendant's practice of collecting from consumers a higher tax than Defendants intended to remit, thereby wrongfully denying the municipalities of their tax revenues. The court finds that this allegation is sufficiently unfair and deceptive to satisfy the liberal pleading requirements of Rule 12(b)(6).

### 2. Defendants' Claim that Plaintiffs Are Not Seeking Redress for Misrepresentations to Consumers

■ Defendants also claim that Plaintiffs' SCUTPA claim should fail as a matter of law because SCUTPA only applies to misrepresentations made to consumers. (Defs.' Mem. at 26.) Defendants assert that SCUTPA does not apply to tax disputes between persons and governments. However, Defendants once again overlook that, according to the facts in the Amended Complaints, this is not merely a case of

the Defendants claiming they are not subject to the tax. The allegation is that Defendants were collecting the tax from consumers and refusing to remit it to the municipalities. If a consumer is charged a "tax" in addition to the retail price of an accommodation, he or she would reasonably assume that the amount of the tax is set by the state or local government in question, and that that money will be paid to said state or local government. If Defendants did, as alleged, keep part of this money as profit on the transaction, this misrepresentation to consumers is sufficient to support a SCUTPA cause of action.

### 3. Defendants' Claim that SCUTPA Is Irreconcilable with the Local Taxing Schemes

■ Defendants also claim that Plaintiffs' SCUTPA claim must fail as a matter of law because the application of SCUTPA to these events is irreconcilable with the taxing scheme as envisioned by legislators. *Id.* at 26–27. Defendants argue that allowing Plaintiffs to proceed would allow them to unfairly seek additional damages and attorneys' fees, which they could not otherwise do under the tax statute. Once again, Defendants mischaracterize the allegations of the case as presenting solely a tax issue. SCUTPA does not apply to ordinary tax cases, but Plaintiffs have sufficiently alleged a SCUTPA cause of action here because this is not a case where the allegation is merely that Defendants refused to pay taxes. The allegations are that Defendants told online consumers that they were collecting certain money as taxes, consumers were paying those "taxes," and then Defendants were keeping a substantial portion of that money as profit. This is precisely the type of behavior that SCUTPA was intended to punish and deter, and allowing Plaintiffs' case to go forward will not somehow extend a SCUTPA cause of action to ordinary tax cases.

### 4. Defendants' Claim that Their Alleged Conduct Was Not Conduct in "Trade" or "Commerce" as Required by SCUTPA

■ Defendants go on to claim that Plaintiffs' SCUTPA claim should fail as a matter of law because SCUTPA only applies to conduct in the course of trade or commerce, and Defendants' alleged conduct does not fit into either category. (Defs.' Mem. at 27.) SCUTPA defines this as "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." S.C.Code Ann. § 39–5–10 (2006).

The court is at a loss to comprehend Defendants' claims that their alleged actions do not constitute trade or commerce. Defendants advertised their services, and when consumers visited their websites, Defendants provided consumers with hotel rooms in exchange for monetary consideration. This is plainly trade or commercial activity of the type legislators intended to regulate by enacting SCUTPA, and the court rejects Defendants' claim to the contrary.

Accordingly, Defendants' Motion to Dismiss as to Plaintiffs' SCUTPA claim is denied.

### CONCLUSION

It is, therefore **ORDERED,** for the foregoing reasons, that Defendants' Motion to Dismiss, as to all five counts, be **DENIED.**

**AND IT IS SO ORDERED.**